# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

FEDERAL TRADE COMMISSION, and the
STATE OF FLORIDA
Plaintiffs,

      v.

Boost Software, Inc., a Massachusetts Corporation,

Vast Tech Support, LLC, a Florida limited liability
company, also doing business as OMG Tech Help,
OMG Total Protection, OMG Back Up,
Downloadsoftware.com, and
Softwaretechsupport.com,

OMG Tech Help, LLC, a Florida limited liability
company,

Success Capital, LLC, a Florida limited liability
company,

Jon Paul Holdings, LLC, a Florida limited liability
company,

Amit Mehta, individually and as an officer of Boost
Software, Inc.,

Elliot Loewenstern, individually and as a
member/officer of Vast Tech Support, LLC, OMG
Tech Help, LLC, and Success Capital, LLC,

Jon-Paul Vasta, individually and as a member/officer
of Vast Tech Support, LLC, and OMG Tech Help,
LLC.

Mark Donohue, individually and as an owner/officer
of Vast Tech Support, LLC,

Defendants.

Case No. *14CV81397 RYSKAMP/HOPKINS*
*Emergency*
**COMPLAINT FOR PERMANENT
INJUNCTION AND OTHER
EQUITABLE RELIEF**



FILED BY _____ D.C.

NOV 10 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

Plaintiffs, the Federal Trade Commission ("FTC") and the State of Florida, for their Complaint allege:

1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, as amended, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill gotten monies, and other equitable relief for the Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, as amended.

2. The State of Florida, by and through its Attorney General, Pamela Jo Bondi, brings this action under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq., to obtain temporary, preliminary and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief, as well as civil penalties, for Defendants' acts or practices in violation of the FDUTPA.  The State of Florida has conducted an investigation, and the head of the enforcing authority, Attorney General Pamela Jo Bondi, has determined that an enforcement action serves the public interest.

**Overview**

3. Defendants Boost Software, Inc., and Amit Mehta (collectively "Boost Defendants") and Defendants Vast Tech Support, LLC, OMG Tech Help LLC, Success Capital, LLC, Jon Paul Holdings, LLC, Elliot Loewenstern, Jon-Paul Vasta and Mark Donohue (collectively "Vast Defendants")  operate a multi-million dollar scheme to sell tech

2

support services to consumers nationwide.  Beginning with tricky online advertisements and culminating in deceptive telephone calls, Defendants convince consumers to run, or permit Defendants to run, scans on their computers to detect problems.  The system scans invariably detect hundreds of errors or problems purportedly in need of repair.  Through these scans, Defendants dupe consumers into believing that their computers are riddled with problems and that Defendants' product or services can fix the problems.

4. The Defendants recommend and charge for software or repairs even when computers are in good working order and have no performance problems.  Consumers pay as much as $500 for these so-called "repairs," in addition to other charges for software.  Through the course of the scheme, the Defendants have caused more than $22 million in consumer injury.  Many of the victims are senior citizens.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

6. This Court has supplemental jurisdiction over the State of Florida's claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (b)(3), (c)(1) and (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFFS

8. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108, as amended.  Pursuant to

the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

9. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A)-(B), 57b, 6102(c), and 6105(b).

10. The State of Florida is the enforcing authority under the FDUTPA pursuant to Florida Statutes Section 501.203(2) and is authorized to pursue this action to enjoin violations of the FDUTPA and to obtain legal, equitable or other appropriate relief including rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, civil penalties, or other relief as may be appropriate. Fla. Stat. §§ 501.207, 501.2075 and 501.2077.

## DEFENDANTS

## BOOST DEFENDANTS

11. Defendant Boost Software, Inc., ("Boost") is a Massachusetts corporation with its principal place of business at 360 Newberry Street, Unit 411, Boston, Massachusetts 02115. Boost has offices at 75 Arlington Street, Suite 500, Boston, Massachusetts 02116, and at least one office in Naples, Florida. Boost transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Boost has advertised, marketed, distributed, or sold software or technical support services to consumers throughout the United States.

12. Defendant Amit Mehta ("Mehta") is the President and Treasurer of Boost as well as one of its Directors.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Boost as set forth in this Complaint.   Defendant Mehta has appeared on Web-based presentations to potential Boost affiliates where he urged potential affiliates to use advertising content for PC HealthBoost like that used by the Vast Defendants on downloadsoftware.com, and which is Attachment B to the complaint.   Defendant Mehta resides in Newton, Massachusetts, and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## VAST DEFENDANTS

13. Defendant Vast Tech Support, LLC ("Vast"), is a Florida limited liability company with its principal place of business at 2855 S. Congress Avenue, Suite AB, Delray Beach, Florida, 33445.  Its managing members are Success Capital, LLC and Jon Paul Holdings, LLC.  Vast also does business as OMG Tech Help, OMG Total Protection, OMG Back Up, Downloadsoftware.com, and Softwaretechsupport.com, and is the managing member of OMG Tech Help, LLC and DOWNLOADSOFTWARE.COM, LLC.  Vast transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Vast has advertised, marketed, distributed, or sold software, computer security or technical support services to consumers throughout the United States.

14. Defendant OMG Tech Help LLC ("OMG Tech") is a Florida limited liability company with its principal place of business at 2855 S. Congress Avenue, Boca Raton, Florida,

33445.  Its managing member is Vast and it is a division of Vast.  OMG Tech transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, OMG Tech has advertised, marketed, distributed, or sold computer security or technical support services to consumers throughout the United States.

15. Defendant Success Capital, LLC ("Success Capital") is a Florida limited liability company with its principal place of business at 2855 S. Congress Avenue, Suite AB, Delray Beach, Florida, 33445.  Elliot Loewenstern is the owner and a managing member of Success Capital.

16. Defendant Jon Paul Holdings, LLC ("Jon Paul Holdings") is a Florida limited liability company with its principal place of business at 18317 Fresh Lake Way, Boca Raton, Florida 33498.

17. Defendant Elliot Loewenstern ("Loewenstern") is the CEO of Vast and OMG Tech, a managing member of Success Capital, and the Managing Partner of Vast.  Loewenstern signs legal documents on behalf of Vast, OMG Tech, and Success Capital, including corporate filings and fictitious name applications.  He has signatory authority over bank accounts titled in the names of Vast, and Success Capital   Loewenstern identifies himself as an owner of Vast and Success Capital.  Loewenstern pays Vast's bills and has registered Vast/OMG Tech websites, including www.omgtechhelp.com.  He has an office at Vast.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices as set forth in this Complaint.  Defendant Loewenstern resides in Boca

Raton, Florida and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

18. Defendant Jon-Paul Vasta ("JP Vasta") is the President of Vast and OMG Tech. JP Vasta has signatory authority over bank accounts titled in the name of Vast. JP Vasta identifies himself as the owner of Vast on bank account applications. He wrote scripts used by Vast telemarketers. He has an office at Vast. JP Vasta is the beneficial owner of Jon Paul Holdings, LLC. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices as set forth in this Complaint. Defendant Vasta resides in Boca Raton, Florida, and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

19. Defendant Mark Donohue is an owner, officer or manager at Vast.  His is one of the three founders of Vast along with Loewenstern and JP Vasta.  He has signatory authority over bank accounts titled in the names of Vast and identifies himself as the owner of Vast on those bank account applications.  He is the Chief Operating Officer of Vast.  Donahue has an office at Vast.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices as set forth in this Complaint.  Defendant Donohue resides in Del Ray Beach, Florida, and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMON ENTERPRISE

20. Vast, OMG Tech, Success Capital, and Jon Paul Holdings ("the Vast Corporate Defendants") operate and function as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged in this Complaint.  The Vast Corporate Defendants conduct the business practices described in this Complaint through an interrelated network of companies that share owners, members, officers, locations, individuals, telephone numbers, domain registrants, bank signatories, or funds. For example, Vast, OMG Tech, and Success Capital all share a common business address, 2855 S. Congress Avenue, Boca Raton, Florida, 33445.  Furthermore, Vast has done business as "OMG Tech Help," and paid domain registration fees for omgtechhelp.com.  Because the Vast Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices described in this Complaint.  Individual Defendants Elliot Loewenstern, Jon-Paul Vasta and Mark Donahue have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Vast Corporate Defendants that constitute the common enterprise.

## COMMERCE

21. At all times material to this Complaint, the Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

8

## <u>DEFENDANTS' BUSINESS ACTIVITIES</u>

### Defendants Claim that PC HealthBoost Significantly or Dramatically Increases PC Speed and Prevents PC Crashes

22. The Defendants' scheme begins with advertisements for PC HealthBoost, a registry software product created by the Boost Defendants. Both the Boost Defendants and the Vast Defendants advertise PC HealthBoost. The Boost Defendants also advertise through affiliates.

23. Since at least October 2012, the Boost Defendants have advertised and distributed PC HealthBoost on websites such as the Boost Defendants' pchealthboost.com (See Attachment A). The advertising at pchealthboost.com contains the following statements and depictions among others:

> Clean UP Your PC in Just a Couple Clicks

> Performance Boost: In just a couple clicks, dramatically increases PC speed, performance, and stability.

> Protection Against PC Problems: Repair & prevent windows errors, pc crashes and freezes, blue screen errors, and much more.

24. The Vast Defendants' website downloadsoftware.com also advertises PC HealthBoost software (See Attachment B). The advertising used by the Vast Defendants contains the following statements and depictions, among others:

> PC Health Boost

> Most Trusted Source For PC Health Software

> Safely Speed Up your PC by UP to 216%

> Boost PC Speed & Performance Now

> *Slow PC?* In less than 2 minutes, PC HealthBoost will significantly boost your PC speed & performance…

9

Prevent PC Crashes and Freeze

PC ever Crash or Freeze Up?  After running PC HealthBoost, your PC crashes
and freezes will be gone, saving you months of headaches and frustration.

25. PC HealthBoost does not significantly increase PC speed for the typical consumer.

26. The vast majority of consumers whose computers are experiencing crashes and freezes
would not have their problems solved by PC HealthBoost.  There are a large number of
causes for system crashes and freezes that cannot be fixed by PC HealthBoost, such as
failing computer components and electrical issues.

### PC HealthBoost's Deceptive Scan Flags Problems That Do Not Impact Computer Performance

27. Consumers reach pchealthboost.com by going directly to the website.  Consumers who
click on the "Download PC HealthBoost Now" button on downloadsoftware.com are also
taken to the website pchealthboost.com.

28. Pchealthboost.com encourages consumers to download a free version of PC HealthBoost.

29. After consumers download the free program, PC HealthBoost performs a "system scan"
of consumers' computers automatically.  This scan leads consumers to believe that their
systems have numerous errors in need of repair.  The scan results are misleading and flag
purported "errors" that have no material impact on performance.

30. The PC HealthBoost scan flags innocuous and beneficial files found on nearly every
computer, such as the computers' temporary files and cookies.   Moreover, the free scan
identifies Windows DLLs (Dynamic Link Libraries) as "errors" to be removed, which
could potentially cause problems for the computer. *See* Image 1 below.



(Image 1)

31. Once the Boost Defendants trick consumers into thinking that their computer has
numerous "errors," they then instruct consumers to "Click 'Continue' to restore your PC
to full health. (Recommended)," as shown in Image 1 above.  When consumers click the
"Continue" button, they learn that they must pay $29.97 for the "Registered" version of
the program in order to fix the vast majority of the so-called "errors," as shown in Images
2 and 3.  Many consumers exposed to the proposed Defendants' false scans agree to pay
the $29.97 fee for the program (or $43.94 for two years).



(Image 2)



(Image 3)

**The PC HealthBoost Software Directs Consumers to Call Vast for Software Activation**

32. Consumers who purchase PC HealthBoost have already been deceived into believing that their computers have significant damage through a bogus "system scan."  Moreover, they have already spent money for a product they likely did not need.  The tech support scam, however, has only just begun.  Once consumers pay $29.97 for the full version of PC HealthBoost, the order confirmation states:  "To activate your software, call us toll-free at the number above.  Our certified technicians will securely connect to your PC and remotely activate your software for you.  At your request, we will diagnose your PC for other hard-to-identify problems."  *See* Image 4 below.



(Image 4)

This toll-free number and others that appear on Defendants' order confirmation pages,

such as (855) 249-8391, are owned by the Vast Defendants and route consumers to the

Vast Defendants' call center, operated by OMG Tech.

**The Vast Defendants Lure Consumers to Call**
**Their Inbound Call Center**

33. Since at least October 2012, the Vast Defendants have used their marketing arrangement

with the Boost Defendants and others, as well as their own advertising or marketing and

popups, to lure consumers to call their inbound call center.  Among other things, the Vast

Defendants reach consumers using:  (1) inbound calls made by consumers seeking to

register software (such as the calls generated by consumers seeking to register PC

HealthBoost); (2) bogus warning pop-ups that claim to have detected computer

infections, freeze consumers' computer screens, and direct consumers to call one of the

Vast Defendants' toll-free phone numbers to have the problem fixed; and (3) the Vast

Defendants' Internet-based advertisements.

**The Vast Defendants Scare Consumers into Buying Unnecessary**
**Technical Support and Security Software Products**

34. In many instances, once consumers reach the Vast Defendants' call center, OMG Tech,

telemarketers walk the consumer through a path that inevitably leads to the conclusion

that the consumer's computer needs more help than PC HealthBoost software can provide

and is in need of expert repair.  The Vast Defendants offer the additional sale of services

or products such as repairs and additional computer software.

35. In many instances, the Vast Defendants first direct the consumers to go to omg22.com

and enter a code or download a software application to allow the Vast Defendants remote

access to the consumers' computers.  Once the Vast Defendants have remote access, they

are able to completely control the consumers' computers and can, for example, move the cursor, enter commands, run applications, and access stored information.

36. Once inside, the Vast Defendants walk the consumer through a diagnostic process that inevitably finds supposed problems, errors, warnings, or damage through depictions of the Event Viewer screen, Windows Task Manager, or other means. The Vast Defendants falsely represent that the diagnostic process has identified performance or security issues on consumers' computers.

37. One standard ploy is to direct consumers to the Event Viewer program on the computer, and use the error and warning signs that inevitably appear to scare consumers into purchasing unneeded repairs. Image 5 below shows a screenshot of the Event Viewer opened by a Vast Defendants' telemarketer and shown to an undercover FTC investigator during an undercover sales call.



(Image 5)

38. Despite their potentially alarming appearance, these messages are not necessarily an indication that a machine needs to be repaired.  The Event Viewer is a Windows feature that logs and displays information about prior events within the operating system.  Events are categorized in a number of ways, including "errors" or "warnings," but neither the number of events nor the way they are categorized is necessarily indicative of any serious issues.

16

39. "Errors" and "warning" messages in Event Viewer are often generated during the normal operation of a computer. If, for example, a program failed to run correctly because the computer was not connected to the Internet, the Event Viewer may record an error or warning message. Even if the error messages are removed, after only a few short hours of normal, day-to-day computer use, the Event Viewer will again contain new errors and warnings commonly associated with typical Windows activity. Furthermore, removing these error and warning messages is not effective, and may actually be harmful. If there are actual problems with the computer in the future, vital logs of activity will no longer be available to resolve those issues, if the error messages are removed.

40. The Vast Defendants' telemarketers' warnings about the problems associated with "errors" and "warnings" listed in the Event Viewer are designed to scare consumers into purchasing technical support services even though the Vast Defendants' telemarketers have no reason to know whether any repairs are necessary.

41. Another ploy is to use Windows Task Manager to convince consumers that they have too many processes or programs running. Windows Task Manager is a built-in Windows utility that displays information about current programs, processes, and services running on a Windows computer. It is commonplace for a computer to have a number of processes running in the background.

42. The telemarketers also use car analogies to convince consumers that their computer is in immediate danger and needs repairs. For example, a telemarketing script states the following: "Your computer is like an engine. Now what happens if you over rev an engine too high or overwork it? (Pause) Exactly – it could break!"

17

43. Furthermore, the Vast Defendants' telemarketers claim that even after software is uninstalled, trace elements or running services are left behind that can cause a consumer's computer to run slowly.  This claim is inaccurate.  The vast majority of software uninstallation packages fully remove the associated software.

44. After directing consumers to the Event Viewer, Windows Task Manager, or elsewhere on the computer, the Vast Defendants' telemarketers will state that consumers' computers have, among other things, errors, warnings, evidence of past or current malware, infections, "trace damage," or too many processes are running.

45. In numerous instances, the problems, errors, warnings, evidence of malware, infections, and/or "trace damage" or excessive number of processes running identified by the Vast Defendants do not affect the performance or security of consumers' computers.

46. Having convinced consumers that their computers are in immediate danger, the Vast Defendants tell consumers that they can have their computer repaired by a well-known retailer that will be very costly and cause them to be without a computer for many days.  Or, consumers can purchase technical support directly from the Vast Defendants and have their computer repaired the same day while they sit in the comfort of their own home.

47. Many consumers agree to pay the Vast Defendants for technical support.  The Vast Defendants obtain the consumers payment information over the telephone and then charge consumers as much as $500 for these "repairs" based upon the false and unsupported claim that customers' computers have problems requiring technical support.

48. After charging consumers for technical support, the Vast Defendants transfer the consumer's remote access session to a technician who purportedly makes "repairs."  In

numerous cases, these so-called 'repairs" are unnecessary or harm the computers' performance.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

49. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

50. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### COUNT I – BOOST DEFENDANTS
### Deceptive Representation
### (By Plaintiff FTC)

51. In numerous instances, in the course of marketing, offering for sale, and selling computer software or services, the Boost Defendants represent or have represented, expressly or by implication, through a variety of means, including scans and software-generated test or reports, that they have identified errors or problems that will affect the performance of consumers' computers.

52. In truth and in fact, in numerous instances in which the Boost Defendants have made the representations set forth in Paragraph 51, the many problems or errors that the Boost Defendants represent that they have identified do not affect the performance of consumers' computers.

53. Therefore, the Boost Defendants' representations as set forth in Paragraph 51 are false, misleading, or were not substantiated at the time they were made, and thus, they constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II – THE VAST DEFENDANTS
### Deceptive Representation
### (By Plaintiff FTC)

54. In numerous instances, in the course of marketing, offering for sale, and selling computer software or services, the Vast Defendants represent or have represented, expressly or by implication, through a variety of means, including telephone calls and internet communications, that they have identified performance or security problems on consumers' computers, including errors, warnings, evidence of malware, or trace damage that will affect the performance or security of consumers' computers.

55. In truth and in fact, in numerous instances in which the Vast Defendants have made the representations set forth in Paragraph 54, the many problems that the Vast Defendants represent that they have identified do not affect the performance or security of consumers' computers.

56. Therefore, the Vast Defendants' representations as set forth in Paragraph 54 are false, misleading, or were not substantiated at the time they were made, and thus, they constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

57. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C.§§ 6101-6108, in 1994. The FTC adopted the original Telemarketing Sales Rule in 1995, extensively amended it in 2003, and amended certain provisions thereafter.

58. The Vast Defendants are "sellers" or "telemarketers" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(aa), (cc), and (dd).

59. The TSR prohibits any seller or telemarketer from making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution. 16 C.F.R. § 310.3(a)(4).

60. The TSR's prohibition against making false or misleading statements applies to all statements regarding upsells, whether the statements were made during an outbound call initiated by the telemarketer or an inbound call initiated by a consumer.  16 C.F.R. § 310.6(4).

61. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. §  6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT III – THE VAST DEFENDANTS**
**Deceptive Telemarketing Calls in Violation of the TSR**
**(By Both Plaintiffs)**

62. In numerous instances, in the course of telemarketing their goods and services, the Vast Defendants have made false or misleading statements, directly or by implication, to induce consumers to pay for goods or services, including, but not limited to, misrepresentations that they have identified performance or security problems on consumers' computers.

63. The Vast Defendants' acts or practices, as described in Paragraph 62 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(4), 310.6(4).

## VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

64. Section 501.204 of FDUTPA, Chapter 501, Part II, Florida Statutes, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

### COUNT IV – THE BOOST DEFENDANTS
### Florida Deceptive and Unfair Trade Practices Act Violation
### (By Plaintiff State of Florida)

65. As set forth in Paragraphs 1 through 48 above, which allegations are incorporated as if set forth herein, in numerous instances, in the course of marketing, offering for sale, and selling computer software or services, the Boost Defendants represent or have represented, expressly or by implication, through a variety of means, including scans and software-generated test or reports, that they have identified  errors or warnings that will affect the performance of consumers' computers.

66. In truth and in fact, in numerous instances in which the Boost Defendants have made the representations set forth in Paragraph 65 of this Complaint, the errors or problems that the Boost Defendants have identified do not affect the performance of consumers' computers.

67. The Boost Defendants' representations as set forth in Paragraph 65 of this Complaint are false and misleading and likely to mislead consumers acting reasonably, and/or consumers within the State of Florida were actually misled by the Boost Defendants' misrepresentations in violation of Section 501.204 of FDUTPA.

### COUNT V – THE VAST DEFENDANTS
### Florida Deceptive and Unfair Trade Practices Act Violation
### (By Plaintiff State of Florida)

68. As set forth in Paragraphs 1 through 48 above, which allegations are incorporated as if set forth herein, in numerous instances, in the course of marketing, offering for sale, and

22

selling computer software or services, the Vast Defendants represent or have represented, expressly or by implication, through a variety of means, including telephone calls and internet communications, that they have identified  performance or security issues on consumers' computers, including  errors, warnings, malware or trace damage that will affect the performance or security of consumers' computers.

69. In truth and in fact, in numerous instances in which the Vast Defendants have made the representations set forth in Paragraph 68 of this Complaint, the many errors or problems that the Vast Defendants have identified do not affect the performance or security of consumers' computers.

70. Defendants' representations as set forth in Paragraph 68 of this Complaint are false and misleading and likely to mislead consumers acting reasonably, and/or consumers within the State of Florida were actually misled by Defendants' misrepresentations in violation of Section 501.204 of FDUTPA.

## CONSUMER INJURY

71. Consumers have suffered and will continue to suffer substantial injury as a result of the Defendants' violations of the FTC Act, the TSR, and the FDUTPA.  In addition, the Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, the Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

72. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable

jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

73. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from the Defendants' violations of the TSR, including the rescission or reformation of contracts, and the refund of money.

74. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow Plaintiff State of Florida to enforce its state law claims against Defendants in this Court for violations of the FDUTPA. Florida Statutes Sections 501.207, 501.2075, and 501.2077 authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violation of the FDUTPA, including injunctive relief, rescission or reformation of contract, the refund of monies paid, the disgorgement of ill-gotten monies, and civil penalties.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, the TSR, and the Court's own equitable powers, and Plaintiff State of Florida, pursuant to Florida Statutes Sections 501.207, 501.2075, and 501.2077 and as authorized by the Court's own equitable powers, request that the Court:

A.      Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to temporary and preliminary injunctions, and an order providing for the turnover of business records, an asset

freeze, immediate access and the appointment of a receiver, and the disruption of domain and telephone services;

B.      Enter a permanent injunction to prevent future violations of the FTC Act, the TSR, and FDUTPA by the Defendants;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from the Defendants' violations of the FTC Act, the TSR, and FDUTPA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.      Award Plaintiff FTC the costs of bringing this action, and Plaintiff State of Florida its attorneys' fees and costs in bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

Dated: *November 10, 2014*

*Russell Deitch*

J. RONALD BROOKE, JR.
RUSSELL DEITCH
Maryland Bar Number  0202280002
Special Florida Bar Number A5500529
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION
Federal Trade Commission
600 Pennsylvania Ave. NW
Washington, DC 20580
(202) 326-3484; jbrooke@ftc.gov
(202) 326-2585; rdeitch@ftc.gov

PAMELA JO BONDI
Attorney General
State of Florida

Katherine A. Kiziah
Assistant Attorney General
Florida Bar No. 0017585
Office of the Attorney General
Consumer Protection Division
1515 N. Flagler Drive
Suite 900
West Palm Beach, Florida 33401
Telephone: (561) 837-5007
Facsimile: (561)
Katherine.Kiziah@myfloridalegal.com

Attachment A









Attachment B



