## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and STATE OF FLORIDA<br><br>Plaintiffs,<br>    v.<br><br>Boost Software, Inc., a Massachusetts Corporation,<br><br>Vast Tech Support, LLC, a Florida limited liability company, also does business as OMG Tech Help, OMG Total Protection, OMG Back Up, Downloadsoftware.com, and Softwaretechsupport.com,<br><br>OMG Tech Help, LLC, a Florida limited liability company,<br><br>Success Capital, LLC, a Florida limited liability company,<br><br>Jon Paul Holdings, LLC, a Florida limited liability company,<br><br>Amit Mehta, individually and as an officer of Boost Software, Inc.,<br><br>Elliot Loewenstern, individually and as a Member of Vast Tech Support, LLC, OMG Tech Help, LLC, and Success Capital, LLC,<br><br>Jon-Paul Vasta, individually and as a member/officer of Vast Tech Support, LLC, and OMG Tech Help, LLC,<br><br>Mark Donohue, individually and as an officer of Mark Alexander Group,<br><br>Defendants. | Case No. _14CV81397 KLR/JMH_<br><br>**[PROPOSED] TEMPORARY RESTRAINING ORDER**<br><br>**Filed Under Seal** |

Plaintiffs, the Federal Trade Commission ("FTC" or the "Commission") and the State of

Florida have filed a Complaint for Permanent Injunction and Other Equitable Relief pursuant to

Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. 501.201 *et seq*. (Docket No.____), and have moved, pursuant to Federal Rule of Civil Procedure 65(b), for a Temporary Restraining Order, Asset Freeze, Other Equitable Relief, and for an Order to Show Cause Why a Preliminary Injunction Should Not Issue against Defendants Boost Software, Inc., Vast Tech Support, LLC, OMG Tech Help, LLC, Success Capital, LLC, Jon Paul Holdings, LLC, Amit Mehta, Elliot Loewenstern, Jon-Paul Vasta, and Mark Donohue.  (Docket No.____.)

## FINDINGS OF FACT

The Court, having considered the Complaint, the *ex parte* motion for a temporary restraining order, declarations, exhibits, and the memorandum of points and authorities filed in support thereof, and being otherwise advised, finds that:

1.      This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper;

2.      There is good cause to believe that the Defendants Boost Software, Inc., Vast Tech Support, LLC, OMG Tech Help, LLC, Success Capital, LLC, Jon Paul Holdings, LLC, Amit Mehta, Elliot Loewenstern, Jon-Paul Vasta, and Mark Donohue have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310, and Section 501.204 of FDUTPA, and that the FTC and the State of Florida are therefore likely to prevail on the merits of this action;

2

3.      There is good cause to believe that immediate and irreparable harm will result from the Defendants' ongoing violations of Section 5 of the FTC Act, the TSR and Section 501.204 of FDUTPA unless Defendants are restrained and enjoined by Order of this Court;

4.      There is good cause to believe that immediate and irreparable damage to this Court's ability to grant effective final relief for consumers, including monetary restitution, rescission, disgorgement or refunds, will occur from the sale, transfer, or other disposition or concealment by Defendants of their Assets or records if Defendants are provided with advance notice of this Order, and that therefore in accordance with Fed. R. Civ. P. 65(b), the interests of justice require that this Order be granted without prior notice to Defendants. Thus, there is good cause for relieving the FTC and the State of Florida of the duty to provide Defendants with prior notice of the FTC and the State of Florida's application;

5.      Good cause also exists for (a) the appointment of a Temporary Receiver over the Defendants Vast Tech Support, LLC, OMG Tech Help, LLC, Success Capital, LLC, (b) freezing the Assets of Defendants Vast Tech Support, LLC, OMG Tech Help, LLC, Success Capital, LLC, Elliot Loewenstern, Jon-Paul Vasta, and Mark Donohue and (c) the ancillary relief ordered below;

6.      Weighing the equities and considering Plaintiffs' likelihood of ultimate success on the merits, a temporary restraining order with an asset freeze, and other equitable relief, is in the public interest; and

7.      The FTC is an independent agency of the United States of America and no security is required of any agency of the United States for the issuance of a temporary restraining order. Fed. R. Civ. P. 65(c). Similarly, under Florida Rules of Civil Procedure and governing case law, no security is required for the State of Florida.

3

## DEFINITIONS

For the purpose of this Temporary Restraining Order ("Order"), the following definitions shall apply:

1.   **"Asset"** " means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property including chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares or stock, securities, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), insurance policies, lines of credit, cash, trusts (including asset protection trusts), lists of consumer names and reserve funds or any other accounts associated with any payments processed by, or on behalf of, any Defendant, including such reserve funds held by payment processors, credit card processors, banks or other financial institutions.

2.   **"Boost Corporate Defendant"** means Boost Software, Inc. and their subsidiaries, affiliates, successors and assigns.

3.   **"Boost Defendants"** means individually, collectively, or in any combination Boost Software, Inc., and Amit Mehta.

4.   **"Commission"** or **"FTC"** means the Federal Trade Commission.

5.   **"Corporate Defendants"** means, individually, collectively, or in any combination, Boost Software, Inc., Vast Tech Support, LLC, OMG Tech Help, LLC, Success Capital, LLC, Jon Paul Holdings, LLC and their subsidiaries, affiliates, successors and assigns.

6.      "**Defendants**" means individually, collectively, or in any combination, each Corporate Defendant and Individual Defendant.

7.      "**Document**" includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and any other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

8.      "**Electronic Data Host**" means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information.

9.      "**Financial Institution**" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

10.     "**FTC Act**" means the Federal Trade Commission Act codified at 15 U.S.C. §§ 41-58.

11.     "**Individual Defendants**" means Amit Mehta, Elliot Loewenstern, Jon-Paul Vasta, and Mark Donohue.

12.      "**PC HealthBoost Product**" means any registry cleaner software by or on behalf of the Boost Corporate Defendant.

13.     "**Person**" means a natural person, organization, or other legal entity, including a corporation, limited liability company, partnership, proprietorship, association, cooperative, government or governmental subdivision or agency, or any other group or combination acting as an entity.

5

14.   **"Plaintiffs"** means the Federal Trade Commission and the State of Florida.

15.   **"Receiver"** or **"Temporary Receiver"** means the temporary receiver appointed in Section XIII of this Order and any deputy receivers that shall be named by the temporary receiver.

16.   **"Receivership Defendants"** means the Vast Corporate Defendants.

17.   **"Representative"** means Defendants' successors, assigns, officers, agents, servants, employees, and attorneys, and any person or entity in active concert or participation with them who receives actual notice of this Order by personal service or otherwise.

18.   **"Tech Support Product or Service"** means any plan, program or software, marketed to repair, maintain or improve a computer's performance or security, including registry cleaners, anti-virus programs, fire wall programs, and computer or software diagnostic services.

19.   **"Telemarketing"** means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

20.   **"Telemarketing Sales Rule"** or **"TSR"** means the Telemarketing Sales Rule set forth in 16 C.F.R. Part 310.

21.   **"Vast Corporate Defendants"** means Vast Tech Support, LLC, OMG Tech Help, LLC, Success Capital, LLC, Jon Paul Holdings, LLC, and by whatever other names each may be known, and any subsidiaries, divisions, affiliates, any fictitious business entities or business names created or used by these entities, or

6

any of them, and their successors and assigns, individually, collectively, or in any combination.

22. **"Vast Defendants"** means individually, collectively, or in any combination, each Vast Corporate Defendant and Vast Individual Defendant.

23. **"Vast Individual Defendants"** means Elliot Loewenstern, Jon-Paul Vasta, and Mark Donohue.

## I.

### PROHIBITED MISREPRESENTATIONS

**IT IS HEREBY ORDERED** that Defendants and their Representatives, whether acting directly or indirectly, in connection with the marketing, advertising, promotion, distribution, offering for sale, or sale of any goods or services, are hereby temporarily restrained and enjoined from misrepresenting, directly or indirectly, expressly or by implication, any material fact, including that they have identified problems on consumers' computers that will affect the performance or security of the consumers' computers.

## II.

### CONDUCT PROHIBITIONS REGARDING MARKETING

**IT IS HEREBY ORDERED** that Defendants and their Representatives, whether acting directly or indirectly, in connection with the marketing, advertising, promotion, distribution, offering for sale, or sale of any goods or services, are hereby temporarily restrained and enjoined from:

A. Using any false or misleading statement to induce any person to pay for goods or services; or

B.      Violating the Telemarketing Sales Rule, 16 C.F.R. Part 310, attached as Appendix A.

## III.

## SUSPENSION OF CORPORATE DEFENDANTS' WEB SITES

**IT IS FURTHER ORDERED** that any party hosting **pchealthboost.com** or any webpage or website for any  Vast Corporate Defendant and any domain registrar who has provided or is providing domain name registration services to **pchealthboost.com** or on any Vast Corporate Defendant's behalf are hereby temporarily restrained and enjoined from failing to:

A.      Immediately take whatever steps may be necessary to ensure that **pchealthboost.com**  and any webpage or website operated, in whole or in part, in connection with the Vast Corporate Defendants' provision of Tech Support Products or Services cannot be accessed by the public; and

B.      Prevent the destruction or erasure of **pchealthboost.com** and any webpage or website operated, in whole or in part, on any Vast Corporate Defendant's behalf, preserving such documents in the format in which they are currently maintained, and prevent the destruction or erasure of all records relating to **pchealthboost.com** and the Vast Corporate Defendants.

## IV.

## PROHIBITION AGAINST CHARGING OR BILLING CONSUMERS

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or indirectly, are temporarily restrained and enjoined from charging any consumer for the purchase of Defendants' Tech Support Products or Services or PC HealthBoost Product.

## V.

## **ASSET FREEZE**

**IT IS FURTHER ORDERED** that Vast Tech Support, LLC, OMG Tech Help, LLC, Success Capital, LLC, Elliot Loewenstern, Jon-Paul Vasta, and Mark Donohue, *i.e.*, the Vast Defendants, and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby temporarily restrained and enjoined from:

A.   Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing any funds, real or personal property, accounts, contracts, shares of stock, lists of consumer names, or other Assets, or any interest therein, wherever located, including outside the United States, that are:

    1.   owned, controlled or held, in whole or in part, by any Vast Defendant;

    2.   held, in whole or in part, for the direct or indirect benefit of, any Vast Defendant;

    3.   in the actual or constructive possession of any Vast Defendant;

    4.   owned or controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any of the Vast Defendants, or of which any Vast Defendant is an officer, director, member, or manager.  This includes, but is not limited to, any Assets held by, for, or subject to access by, any of the Vast Defendants at any bank or savings and loan institution, or at/with any broker-dealer, escrow agent, title

company, insurance company, commodity trading company, precious metal
dealer, payment processor, credit card processor, acquiring bank, merchant
bank, independent sales organization, third party processor, payment gateway
or other financial institution or depository of any kind;

5. held by an agent of any Vast Defendant as a retainer for the agent's provision
of services to Vast Defendants; or

6. held in any account for which any Vast Defendant is, or was on the date that
this Order was signed, an authorized signor, except as necessary to comply
with Section XV of this Order;

B.      Physically opening or causing to be opened any safe deposit boxes, commercial
mail boxes, or storage facilities titled in the name of any Vast Defendant, either individually or
jointly, or subject to access by any Vast Defendants, except as necessary to comply with Section
XV of this Order;

C.      Incurring charges or cash advances on any credit or bank card issued in the name,
individually or jointly, of any of the Vast Corporate Defendants, or any corporation, partnership,
or other entity directly or indirectly owned, managed, or controlled by any Vast Defendants or of
which any Vast Defendants is an officer, director, member, or manager.  This includes, but is not
limited to, any corporate bank card or corporate credit card account for which any Vast
Defendant is, or was on the date that this Order was signed, an authorized signor;

D.      Obtaining a personal or secured loan encumbering the Assets of any Vast
Defendant; and

E.      Incurring liens or other encumbrances on real property, personal property or other
Assets in the name, individually or jointly, of any Vast Defendants, or of any corporation,

partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant;

      **PROVIDED** that the Assets affected by this Section shall include:  (a) all Assets of the Vast Corporate Defendants; and (b) all Assets of the Vast Individual Defendants existing as of the date this Order was entered, or acquired by any Vast Individual Defendant following entry of this Order, if such Assets are derived from any activity that is the subject of the Commission's Complaint or that is prohibited by this Order.

**VI.**

**DUTIES OF ASSET HOLDERS**

      **IT IS FURTHER ORDERED** that  any financial or brokerage institution, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person served with a copy of this Order that (a) holds, controls, or maintains custody of any account, safe deposit box or Asset of any Vast Defendant, (b) holds, controls, or maintains custody of any Asset associated with credits, debits or charges made on behalf of any Vast Defendant, including reserve funds held by payment processors, credit card processors, payment merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies or other entities, or (c) has held, controlled, or maintained custody of any such account, safe deposit box or Asset at any time since the date of entry of this Order shall:

      A      Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Asset, as well as all Documents or other property related to such Assets, except by further order of this Court;

11

B.      Deny any person, except the Receiver acting pursuant to Section XIV of this Order, access to any safe deposit box, commercial mailbox, or storage facility that is:

      1.      Titled in the name of any Vast Defendant, either individually or jointly; or

      2.      Otherwise subject to access by any Vast Defendant;

C.      Provide the FTC's counsel and the Receiver, within five (5) days of receiving a copy of this Order, a sworn statement setting forth:

      1.      The identification number of each account or Asset:

        a)  titled in the name, individually or jointly, of any of the Vast Defendants;

        b)  held on behalf of, or for the benefit of, any of the Vast Defendants; or

        c)  associated with credit or debit charges made on behalf of Vast Defendants;

      2.      The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

      3.      The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any of the Defendants, or is otherwise subject to access by any of the Defendants; and

D.      Upon request of the Plaintiffs or the Receiver, promptly provide the Plaintiffs or Receiver with copies of all records or other documentation pertaining to such account or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction

12

reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes and storage facilities.

**VII.**

**FINANCIAL DISCLOSURES**

**IT IS FURTHER ORDERED** that each Defendant, within five (5) days of service of this Order upon them, shall prepare and deliver to Plaintiffs' counsel and, in the case of the Receivership Defendants, also to the Receiver:

A.      Completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for themselves individually, and **Attachment B** (Financial Statement of Corporate Defendant) for each business entity under which they conduct business or of which they are an officer, and for each trust for which any Defendant is a trustee.  The financial statements shall be accurate as of the date of entry of this Order and signed under penalty of perjury.  Each Defendant shall include in the financial statements all information requested in the statements, including a full description of all funds and Assets, whether located inside or outside of the United States, that are: (a) titled in the name of such Defendant, jointly, severally, or individually; (b) held by any person or entity for the benefit of such Defendant; or (c) under the direct or indirect control of such Defendant. Defendants shall attach to these completed financial statements copies of all local, state, provincial, and federal income and property tax returns, with attachments and schedules, as called for by the instructions to the financial statements;

B.      A completed statement, signed under penalty of perjury, of all payments, transfers, or assignments of Assets worth $1,000 or more since October 1, 2012.  Such statement shall include:  (1) the amount transferred or assigned; (2) the name of each transferee or

13

assignee; (3) the date of transfer or assignment; and (4) the type and amount of consideration paid to Defendant.  Each statement shall specify the name and address of each financial institution and brokerage firm at which Defendant has accounts or safe deposit boxes.  These statements shall include Assets held in foreign and domestic accounts; and

      C.     A completed IRS Form 4506, appended to this Order as **Attachment C**, requesting tax returns for the past three years be sent to counsel for the FTC at the following address:

> J. Ronald Brooke, Jr.
> Federal Trade Commission
> 600 Pennsylvania Avenue NW
> Mail Stop CC-8528
> Washington, DC 20580
> Facsimile (202) 326-3395

**VIII.**

**<u>FOREIGN DOCUMENT AND ASSET REPATRIATION</u>**

     **IT IS FURTHER ORDERED** that within five (5) days following the service of this Order, each Vast Defendant shall:

      A.     Provide the Plaintiffs and the Receiver with a full description, verified under oath and accurate as of the date of this Order, of all Documents located outside of the United States;

      B.     Provide the Plaintiffs and Receiver access to all records of accounts or Assets of any Vast Defendant held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records appended to this Order as **Attachment D**;

      C.     Transfer to the territory of the United States and, in the case of Receivership Defendants deliver to the Receiver, all Documents and Assets located in foreign countries which are: (1) titled in the name individually or jointly of any Vast Defendant; or (2) held by any

14

person or entity, for the benefit of any Vast Defendant; or (3) under the direct or indirect control of any Defendant, whether jointly or singly; and

D.      The same business day as any repatriation, (1) notify counsel for the Plaintiffs of the name and location of the financial institution or other entity that is the recipient of such funds, Documents, or Assets; and (2) serve this Order on any such financial institution or other entity.

**IX.**

**<u>INTERFERENCE WITH REPATRIATION</u>**

**IT IS FURTHER ORDERED** that Vast Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby temporarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by Section VIII of this Order, including, but not limited to:

A.      Sending any statement, letter, fax, e-mail, wire transmission, telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Vast Defendant Assets have been fully repatriated pursuant to Section VIII of this Order; and

B.      Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all Vast Defendant Assets have been fully repatriated pursuant to Section VIII of this Order.

15

## X.

## CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair Credit

Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency served with this Order

shall promptly furnish consumer reports as requested concerning any Defendant to counsel for

Plaintiffs.  Plaintiffs may also directly access any Defendant's consumer report.

## XI.

## PRESERVATION OF RECORDS
## AND REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants and their Representatives, as well as any

document custodians receiving actual notice of this Order, whether acting directly or through any

entity, corporation, subsidiary, division, director, manager, member, affiliate, independent

contractor, accountant, financial advisor, or other device, are hereby temporarily restrained and

enjoined from:

A.      Destroying, erasing, falsifying, writing over, mutilating, concealing, altering,

transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that

relate to: (1) the business, business practices, Assets, or business or personal finances of any

Defendant, (2) the business practices or finances of entities directly or indirectly under the

control of any Defendant, or (3) the business practices or finances of entities directly or

indirectly under common control with any other Defendant, including:  any and all marketing

materials, Internet pages, consumer complaints, call detail records, telephone logs, telephone

scripts, contracts, correspondence, e-mail, corporate books and records, accounting data,

financial statements, receipt books, ledgers, personal and business canceled checks and check

registers, bank statements, calendars, appointment books, and tax returns;

B.      Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of the Defendants' Assets; and

C.      Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing counsel for the Plaintiffs with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XII.

### PROHIBITION ON RELEASE
### OF CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, are hereby temporarily restrained and enjoined from:

A.      Selling, renting, leasing, transferring, using, disclosing, or otherwise benefitting from the name, address, telephone number, credit card number, bank account number, e-mail address, or other identifying information of any person that Defendant obtained prior to entry of this Order in connection with any activity that pertains to the subject matter of this Order; and

B.      Benefitting from or using the name, address, birth date, telephone number, e-mail address, Social Security number, Social Insurance number, credit card number, bank account number, or other financial or identifying personal information of any Person from whom or

17

about whom any Defendant obtained such information in connection with any activity that pertains to the subject matter of this Order.

**PROVIDED, HOWEVER**, that the Defendants may disclose such identifying information to any civil or criminal law enforcement agency or as required by any law, regulation, or court order.

## XIII.

## APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that _____ is appointed temporary receiver for the Vast Corporate Defendants and any of their telephone sales, technical support, or customer service operations, wherever located, with the full power of an equity receiver. The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court.

## XIV.

## RECEIVER'S DUTIES AND AUTHORITIES

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to accomplish the following:

A.     Assume full control of the Vast Corporate Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Vast Corporate Defendants, including any Defendant, from control of, management of, or participation in, the affairs of the Vast Corporate Defendants;

B.     Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, the Vast Corporate Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in

18

possession, hold, and manage all Assets and Documents of the Vast Corporate Defendants and

other persons or entities whose interests are now under the direction, possession, custody, or

control of, the Vast Corporate Defendants.  The Receiver shall assume control over the income

and profits therefrom and all sums of money now or hereafter due or owing to the Vast

Corporate Defendants. *Provided, however*, that the Receiver shall not attempt to collect any

amount from a consumer if the Receiver believes the consumer was a victim of the deceptive

acts or practices or other violations of law alleged in the Complaint in this matter, without prior

Court approval;

   C.  Take all steps necessary to secure and take exclusive custody of each location

from which the Vast Corporate Defendants operate their businesses.  Such steps may include, but

are not limited to, any of the following, as the Receiver deems necessary or advisable:  (1)

serving this Order; (2) completing a written inventory of all Receivership Defendants' Assets;

(3) obtaining pertinent information from all employees and other agents of the Vast Corporate

Defendants, including, but not limited to, the name, home address, Social Security Number, job

description, company history, passwords or access codes, method of compensation, and all

accrued and unpaid commissions and compensation of each such employee or agent; (4)

photographing and videotaping any or all portions of the location; (5) securing the location by

changing the locks and disconnecting any internet access or other means of access to the

computers, internet or other records maintained at that location; and (6) requiring any persons

present on the premises at the time this Order is served to leave the premises, to provide the

Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that

such persons are not removing from the premises Documents or Assets of the Vast Corporate

Defendants.  Law enforcement personnel, including, but not limited to, police or sheriffs, may

assist the Receiver in implementing these provisions in order to keep the peace and maintain security.  If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

D.    Conserve, hold, and manage all Assets of the Vast Corporate Defendants, and perform all acts necessary or advisable to preserve the value of those Assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of the Vast Corporate Defendants, including, determining the available Assets and preventing the unauthorized transfer, withdrawal, or misapplication of Assets;

E.    Enter into and cancel contracts and purchase insurance as advisable or necessary;

F.    Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Vast Corporate Defendants;

G.    Manage and administer the business of the Vast Corporate Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents, provided that the Receiver shall suspend business operations of the Vast Corporate Defendants if, in the judgment of the Receiver, such operations cannot be continued legally or profitably;

H.    Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

I.       Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Vast Corporate Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Vast Corporate Defendants, such as rental payments;

J.       Suspend business operations of the Vast Corporate Defendants if in the judgment of the Receiver such operations cannot be continued legally and profitably;

K.       Prevent the destruction or erasure of any web page or website registered to and operated, in whole or in part, by Receivership Defendants;

L.       Take all steps necessary to ensure that any of the Receivership Defendants' web pages or websites relating to technical support cannot be accessed by the public, or are modified for consumer education and/or informational purposes;

M.       Take all steps necessary to ensure that any telephone numbers associated with the Receivership Defendants cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations.

N.       Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Vast Corporate Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers;

21

O.      Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Vast Corporate Defendants, as the Receiver deems necessary and advisable to preserve the Assets of the Vast Corporate Defendants, or as the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

P.      Issue subpoenas to obtain Documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the receivership estate;

Q.      Open one or more bank accounts as designated depositories for funds of the Vast Corporate Defendants.  The Receiver shall deposit all funds of the Vast Corporate Defendants in such a designated account and shall make all payments and disbursements from the Receivership estate from such an account.  The Receiver shall serve copies of monthly account statements on all parties;

R.      Maintain accurate records of all receipts and expenditures incurred as Receiver;

S.      Allow the Plaintiffs' representatives, agents, and assistants, as well as Defendants' representatives and Defendants themselves, reasonable access to the premises of the Vast Corporate Defendants , or any other premises where the Vast Corporate Defendants conduct business or telephone sales operations.  The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the Vast Corporate Defendants or its agents.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

T.      Allow the Plaintiffs' representatives, agents, and assistants, as well as Vast Defendants' representatives and Vast Defendants themselves, reasonable access to Documents in the possession, custody, or control of the Vast Corporate Defendants, or on their behalf,

22

including, but not limited to, books, records, tapes, discs, accounting data, checks, correspondence, forms, advertisements, brochures, manuals, electronically stored data, banking records, customer lists, customer files, invoices, telephone records, ledgers and payroll records, and any other Document or record that relates to the business practices or finances of the Vast Corporate Defendants, including electronically stored information (such as electronic mail); and

U.     Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency; and

V.     File timely reports with the Court at reasonable intervals, or as otherwise directed by the Court.

## XV.

## **TRANSFER OF RECEIVERSHIP PROPERTY TO RECEIVER**

**IT IS FURTHER ORDERED** that the Defendants, their Representatives, and any other Person, with possession, custody or control of property of, or records relating to, the Receivership Defendants shall, upon notice of this Order by personal service or otherwise, immediately notify the Receiver of, and, upon receiving a request from the Receiver, immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A.     All Assets of the Receivership Defendants;

B.     All Documents of the Receivership Defendants, including books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title Documents and other papers;

23

C.      All computers, electronic devices, mobile devices and machines and data in whatever form used to conduct the business of the Receivership Defendants;

D.      All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Defendants; and

E.      All keys, codes, user names and passwords necessary to gain or to secure access to any Assets or Documents of the Receivership Defendants, including access to their business premises, means of communication, accounts, computer systems, or other property.

In the event that any person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file ex parte an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the Asset, Document, or other item covered by this Section and to deliver it to the Receiver.

## XVI.

### PROVISION OF INFORMATION TO RECEIVER

**IT IS FURTHER ORDERED** that Defendants shall provide to the Receiver, immediately upon request, the following:

A.      A list of all Assets and property, including accounts, of the Receivership Defendants that are held in any name other than the name of a Receivership Defendant, or by any person or entity other than a Receivership Defendant; and

B.      A list of all agents, employees, officers, servants and those persons in active concert and participation with the Vast Individual Defendants and Receivership Defendants, who have been associated or done business with the Receivership Defendants.  Such list should include every entity that provides leads to the Receivership Defendants.

## XVII.

## COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants, their Representatives, and any other person served with a copy of this Order shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Defendants.  This cooperation and assistance shall include, but not be limited to: providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any password required to access any computer, mobile device, electronic file, or telephonic data in any medium; advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver; transferring funds at the Receiver's direction; and producing records related to the Assets and sales of the Receivership Defendants.  The entities obligated to cooperate with the Receiver under this provision include, but are not limited to, banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, precious metals dealers, credit card processors, payment processors, merchant banks, acquiring banks, independent sales organizations, third-party processors, payment gateways, insurance companies and other financial institutions and depositories of any kind, as well as all common carriers, telecommunications companies and third-party billing agents.

## XVIII.

### NO INTERFERENCE WITH THE RECEIVER

**IT IS FURTHER ORDERED** that Defendants and their Representatives, whether acting directly or through any entity, corporation, subsidiary, division, director, manager, member, affiliate, independent contractor, accountant, financial advisor, or other device, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are hereby restrained and enjoined from:

A.      Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to this Receivership;

B.      Transacting any of the business of the Receivership Defendants;

C.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver; and

D.      Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XIX.

### STAY OF ACTIONS AGAINST VAST CORPORATE DEFENDANTS

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the Receivership ordered herein, Vast Defendants, their Representatives, corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Vast Defendants, and all others acting for or on behalf of such persons, are hereby enjoined

26

from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or documents of the Vast Corporate Defendants, including, but not limited to:

      A.     Petitioning, or assisting in the filing of a petition, that would cause any Vast Corporate Defendant to be placed in bankruptcy;

      B.     Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Vast Corporate Defendants, including the issuance or employment of process against the Vast Corporate Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations;

      C.     Filing or enforcing any lien on any Asset of the Vast Corporate Defendants, taking or attempting to take possession, custody, or control of any Asset of the Vast Corporate Defendants; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Vast Corporate Defendants, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or

      D.     Initiating any other process or proceeding that would interfere with the Receiver's efforts to manage or take custody, control, or possession of, the Assets or Documents subject to this receivership.

      **PROVIDED THAT** this Order does not stay: (i) the commencement or continuation of a criminal action or proceeding; (ii) the commencement or continuation of an action or proceeding by a governmental entity to enforce such governmental entity's police or regulatory power; or (iii) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental entity to enforce such governmental entity's police or regulatory power.

## XX.

### RECEIVER'S BOND

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a

bond in the sum of $_____ with sureties to be approved by the Court, conditioned

that the Receiver will well and truly perform the duties of the office and abide by and perform all

acts the Court directs.  28 U.S.C. § 754.

## XXI.

### COMPENSATION OF THE RECEIVER

**IT IS FURTHER ORDERED** that the Receiver, and all persons or entities retained or

hired by the Receiver as authorized under this Order, including counsel to the Receiver and

accountants, shall be entitled to reasonable compensation for the performance of duties pursuant

to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets

now held by, in the possession or control of, or which may be received by, the Receivership

Defendants.  The Receiver shall file with the Court and serve on the parties periodic requests for

the payment of such reasonable compensation, with the first such request filed no more than

sixty (60) days after the date of entry of this Order.  The Receiver shall not increase the hourly

rates used as the bases for such fee applications without prior approval of the Court.

## XXII.

### ACCESS TO VAST CORPORATE DEFENDANTS'
### BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that, in order to allow the FTC, the State of Florida, and

the Receiver to preserve Assets and evidence relevant to this action, and to expedite discovery,

Plaintiffs and the Receiver, and their agents and assistants, shall have immediate access to all

business premises and storage facilities, owned, controlled, or used by the Vast Corporate

Defendants, including but not limited to the offices of the Vast Corporate Defendants. Such locations include, but are not limited to: **2855 S. Congress Avenue, Suite AB, Delray Beach, Florida, 33445**. The FTC, the State of Florida, and the Receiver are authorized to obtain the assistance of the U.S. Marshal's office and other federal, state and local law enforcement officers, as they deem necessary to effect service and to implement peacefully the provisions of this Order. The FTC, the State of Florida, and the Receiver, and their representatives, agents, and assistants, are authorized to remove Documents from the Vast Corporate Defendants' premises in order that they may be inspected, inventoried, and copied for the purpose of preserving discoverable material in connection with this action. Plaintiffs shall return such material within seven (7) business days of completing inspection, inventory and copying. Plaintiff's access to the Vast Corporate Defendants' documents pursuant to this Section shall not provide grounds for the Vast Corporate Defendants to object to any subsequent request for documents served by any Plaintiff.

The Vast Defendants and all employees or agents of the Vast Corporate Defendants shall provide the FTC, the State of Florida, and the Receiver with any necessary means of access to the Vast Corporate Defendants' Documents and records, including, without limitation, the locations of the Vast Corporate Defendants' business premises, keys and combinations to locks, computer access codes, and storage area access information;

If any computers or other electronic data storage devices containing information related to the business practices or finances of the Vast Corporate Defendants are at a location other than those listed herein, including the personal residences of the Vast Individual Defendants, then immediately upon service of this Order upon them the Vast Individual Defendants shall produce to the Receiver all such computers and other electronic data storage devices. In order to prevent

the destruction of electronic data, upon service of this Order upon the Vast Defendants, any computers or other electronic data storage devices containing such information shall be powered down (turned off) in the normal course for the operating systems used on such devices and shall not be used until produced for copying and inspection, along with any codes needed for access.

Furthermore, the Receiver shall allow the Vast Defendants reasonable access to the premises and business records of the Vast Corporate Defendants within his possession for the purpose of inspecting and copying any Documents relevant to this action. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XXIII.

### IMMEDIATE PRODUCTION OF BUSINESS RECORDS BY THE BOOST DEFENDANTS

**IT IS FURTHER ORDERED** that Boost Defendants shall, within five (5) days of the entry of this Order, produce to Plaintiffs for inspection, inventory, and/or copying, at a location designated by Plaintiffs, the following materials:

A.      All PC HealthBoost Product sales or marketing materials, including, but not limited to all iterations of the PC HealthBoost Product's free scan;

B.      All customer information, including names, phone numbers, addresses, e-mail addresses, customer lists, and payment and refund information for all consumers who have purchased PC HealthBoost, or any other goods or services, directly from the Boost Defendants or through a third-party on behalf of the Boost Defendants;

C.      All Documents related to the Boost Defendants' association with the Vast Defendants;

30

D.      All complaints, including all refund requests, from customers, whether sent directly to the Boost Defendants or received through any law enforcement agency or third-party organizations such as the Better Business Bureau, and any responses from the Boost Defendants;

E.      All accounting information, including sales data, profit and loss statements, annual reports, receipt books, ledgers, reports generated by accounting software, and names and contact information for all accounting professionals retained or utilized by or on behalf of the Defendants;

F.      Recordings of any sales calls or customer service calls;

G.      Any agreements and correspondence (including e-mail, short message service (SMS), instant messaging, or any other electronic communication) between any Boost Defendant and any payment processing company, independent sales organization, or financial institution; and

H.      All computers and electronic data, in whatever form, used by the Boost Corporate Defendant, as well as all access codes, passwords, log-in information, and equipment needed to access such material.  Within one (1) business day of the entry of this Order, the Boost Defendants shall (i) notify counsel for the Plaintiffs of the name and location of any person or entity that is hosting, storing, or otherwise maintaining electronic data ("Electronic Data Host") related the Boost Defendants' operations; and (2) serve this Order on any such person or entity. The Boost Defendants shall provide such Electronic Data Host with their consent for the Plaintiffs and their agents to receive access to Boost Corporate Defendant's data for forensic imaging and the Boost Defendants shall execute any documents and otherwise cooperate as necessary to facilitate such access.

31

The Plaintiffs shall return any material produced pursuant to this Section within seven (7) days of the Boost Defendants' production.

## XXIV.

## EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that, notwithstanding the time periods, notice provisions, and other requirements of Rules 26(d), 26(f), and 30(a)(2)(c) of the Federal Rules of Civil Procedure, and pursuant to Federal Rules of Civil Procedure 30(a), 34, and 45, the FTC is granted leave, at any time after entry of this Order, to conduct limited expedited discovery as to parties and non-parties for the purpose of discovering: (1) the nature, location, status, and extent of Defendants' Assets; (2) the nature and location of Documents reflecting Defendants' businesses, business transactions, and operations; or (3) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A.      Plaintiffs may take the depositions of parties and non-parties. Forty-eight hours (48) notice shall be sufficient notice for such depositions;

B.      Plaintiffs may serve upon parties requests for production of documents or inspection that require production or inspection within five (5) calendar days of service and may serve subpoenas upon non-parties that direct production or inspection within five (5) calendar days of service;

C.      Plaintiffs may serve deposition notices and other discovery requests upon the parties to this action by e-mail, facsimile or overnight courier and depositions may be taken by telephone or other remote electronic means; and

D.      Any discovery taken pursuant to this Order is in addition to, and is not subject to, the presumptive limits on discovery set forth in the Federal Rules of Civil Procedure and Local Rules of this Court;

E.      If a Defendant fails to appear for a properly noticed deposition or fails to comply with a request for production or inspection, that Defendant may be prohibited from introducing evidence at the hearing on the Plaintiffs' request for a preliminary injunction;

F.      The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure; and

G.      The parties are exempted from making initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(B) until further order of this Court.

## XXV.

### **SERVICE OF THIS ORDER**

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including e-mail, text message, social network, electronic messaging service, or facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or Assets of any Defendant, or that may otherwise be subject to any provision of this Order.  Service upon any branch or office of any financial institution shall effect service upon the entire financial institution.

## XXVI.

### **SERVICE UPON PLAINTIFFS**

**IT IS FURTHER ORDERED** that Defendants shall serve all pleadings, memoranda, correspondence, affidavits, declarations, or other documents related to this Order or Plaintiffs'

motion for a preliminary injunction by:  (1) e-mail at jbrooke@ftc.gov or rdeitch@ftc.gov (FTC) and Katherine.Kiziah@myfloridalegal.com (State of Florida); and (2) facsimile transmission to (202) 326-3395 (FTC) and (561) 837-5109 (State of Florida), hand delivery to the offices of the Federal Trade Commission, at 600 Pennsylvania Avenue, NW, Mail Drop CC-8528, Washington, DC 20580, and addressed to the attention of J. Ronald Brooke, Jr., or overnight shipment through a third-party commercial carrier for delivery at the address listed above.

**XXVII.**

**DEFENDANTS' DUTY TO DISTRIBUTE ORDER**

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each of their affiliates, subsidiaries, divisions, sales entities, successors, assigns, officers, directors, employees, independent contractors, client companies, agents, attorneys, spouses and Representatives, and shall, within ten (10) days from the date of entry of this Order, provide the Commission with a sworn statement that:  (A) confirms that Defendants have provided copies of the Order as required by this paragraph; and (B) lists the names and addresses of each entity or person to whom Defendants provided a copy of the Order.  Furthermore, Defendants shall not take any action that would encourage officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

**XXVIII.**

**DURATION OF TEMPORARY RESTRAINING ORDER**

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein shall expire fourteen (14) days from the date of entry noted below unless, within such time, the

34

Order is extended for an additional period not to exceed fourteen (14) days for good cause shown, or unless, as to any Defendant, such Defendant consents to an extension for a longer period.

## XXIX.

## PRELIMINARY INJUNCTION HEARING

**IT IS FURTHER ORDERED**, pursuant to Federal Rule of Civil Procedure 65(b), that each Defendant shall appear before this Court on the _____ day of _____, 2014, at _____ o'clock ____.m., to show cause, if there is any, why this Court should not enter a Preliminary Injunction enjoining the violations of law alleged in the Complaint, continuing the freeze of their Assets, and imposing such additional relief as may be appropriate.

## XXX.

## BRIEFS AND AFFIDAVITS CONCERNING PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED** that Defendants shall file with the Court and serve on the Plaintiffs' counsel any answering affidavits, pleadings, motions, expert reports or declarations, and/or legal memoranda no later than seven (7) days prior to the hearing on Plaintiffs' request for a preliminary injunction. Plaintiffs may file responsive or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on counsel for the Defendants no later than three (3) day prior to the preliminary injunction hearing in this matter. Provided that service shall be performed by: (1) e-mail, if the party or attorney has provided an e-mail address to the opposing party or attorney (e-mails to the FTC shall be delivered to jbrooke@ftc.gov or rdeitch@ftc.gov and e-mails to the State of Florida shall be delivered to Katherine.Kiziah@myfloridalegal.com); and (2) personal or overnight delivery, or facsimile.

Documents shall be delivered so that they shall be received by the other parties no later than 4:00 p.m. (Eastern Standard Time) on the appropriate dates set forth in this Paragraph.

## XXXI.

## LIVE TESTIMONY AND WITNESS IDENTIFICATION

**IT IS FURTHER ORDERED** that the question of whether this Court should enter a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining the Defendants during the pendency of this action shall be resolved on the pleadings, declarations, exhibits, and memoranda filed by, and oral argument of, the parties. An evidentiary hearing on Plaintiff's request for a preliminary injunction is not necessary unless Defendants demonstrate that they have, and intend to introduce, evidence that raises a genuine and material factual issue. *See*, *e.g.*, *McDonald's Corp. v. Robertson*, 147 F .3d 1301, 1312-13 (11th Cir. 1998). Accordingly, live testimony shall be heard only on further order of this Court or on motion filed with the Court and served on counsel for the other parties at least five (5) days prior to the preliminary injunction hearing in this matter. Such motion shall set forth the name, address, and telephone number of each proposed witness, a detailed summary or affidavit revealing the substance of each proposed witness's expected testimony, and an explanation of why the taking of live testimony would be helpful to this Court. Any papers opposing a timely motion to present live testimony or to present live testimony in response to another party's timely motion to present live testimony shall be filed with this Court and served on the other parties at least three (3) days prior to the preliminary injunction hearing in this matter. Provided that service of any motion or brief pursuant to this Section shall be performed by: (1) e-mail, if the party or attorney has provided an e-mail address to the opposing party or attorney (e-mails to the FTC shall be delivered to jbrooke@ftc.gov or rdeitch@ftc.gov and e-mails to the State of Florida shall

be delivered to Katherine.Kiziah@myfloridalegal.com); and (2) personal or overnight delivery, or facsimile.  Documents shall be delivered so that they shall be received by the other parties no later than 4:00 p.m. (Eastern Standard Time) on the dates set forth in this Paragraph.

**XXXII.**

**<u>RETENTION OF JURISDICTION</u>**

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**IT IS SO ORDERED:**

DATED: _____, 2014        _____

                                                   UNITED STATES DISTRICT JUDGE

Per Local Rule 5.4(d), the matter(s) shall remain sealed:
_____ years; _____ (specific date);
_____ permanently; _____ (other).

*Attachment A*

# FEDERAL TRADE COMMISSION

## FINANCIAL STATEMENT OF INDIVIDUAL DEFENDANT

**Instructions**:

1.     Complete all items.  Enter "None" or "N/A" ("Not Applicable") where appropriate.  If you cannot fully answer a question, explain why.

2.     The font size within each field will adjust automatically as you type to accommodate longer responses.

3.     "Dependents" include your live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.

4.     "Assets" and "Liabilities" include <u>ALL</u> assets and liabilities, located within the United States or elsewhere, whether held individually or jointly.

5.     Attach continuation pages as needed.  On the financial statement, state next to the Item number that the Item is being continued.  On the continuation page(s), identify the Item number(s) being continued.

6.     Type or print legibly.

7.     Initial each page in the space provided in the lower right corner.

8.     Sign and date the completed financial statement on the last page.

**Penalty for False Information**:

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

    (1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

    (2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

    (3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration" (18 U.S.C. § 1623).

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

## BACKGROUND INFORMATION

__Item 1.__          **Information About You**

Your Full Name _____ Social Security No. _____

Place of Birth _____ Date of Birth _____ Drivers License No. _____

Current Address _____ From (Date) _____

Rent or Own? _____ Telephone No. _____ Facsimile No. _____

E-Mail Address _____ Internet Home Page _____

Previous Addresses for past five years:

Address_____ Rent or Own?_____ From/Until_____

Address_____ Rent or Own?_____ From/Until_____

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they

were used _____

__Item 2.__          **Information About Your Spouse or Live-In Companion**

Spouse/Companion's Name _____ Social Security No. _____

Place of Birth _____ Date of Birth _____

Identify any other name(s) and/or social security number(s) your spouse/companion has used, and the time period(s)

during which they were used _____

Address (if different from yours) _____

From (Date) _____ Rent or Own?_____ Telephone No._____

Employer's Name and Address _____

Job Title _____ Years in Present Job _____ Annual Gross Salary/Wages $_____

__Item 3.__          **Information About Your Previous Spouse**

Previous Spouse's Name & Address _____

_____ Social Security No. _____ Date of Birth _____

Initials _____

**Item 4.**        **Contact Information**

Name & Address of Nearest Living Relative or Friend _____

_____ Telephone No. _____

**Item 5.**        **Information About Dependents Who Live With You**

‣Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

‣Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

‣Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

**Item 6.**        **Information About Dependents Who Do Not Live With You**

‣Name & Address _____

Date of Birth _____ Relationship _____ Social Security  No._____

‣Name Address _____

Date of Birth _____ Relationship _____ Social Security  No._____

‣Name & Address _____

Date of Birth _____ Relationship _____ Social Security  No._____

**Item 7.**        **Employment Information**

Provide the following information for this year-to-date and for each of the previous five full years, for each company of which you were a director, officer, employee, agent, contractor, participant or consultant at any time during that period. "Income" includes, but is not limited to, any salary, commissions, draws, consulting fees, loans, loan payments, dividends, royalties or other benefits for which you did not pay (*e.g.,* health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

‣Company Name & Address _____

Dates Employed:  From (Month/Year) _____ To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

Initials _____

**Item 7. continued**

Income Received:  This year-to-date:  $_____     _____: $_____

                           20\_\_\_\_:  $_____     _____: $_____

                        _____:  $_____     _____: $_____

▸Company Name & Address _____

Dates Employed:  From (Month/Year) _____ To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

Income Received:  This year-to-date:  $_____     _____: $_____

                           20\_\_\_\_:  $_____     _____: $_____

                        _____:  $_____     _____: $_____

▸Company Name & Address _____

Dates Employed:  From (Month/Year) _____ To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

Income Received:  This year-to-date:  $_____     _____: $_____

                           20\_\_\_\_:  $_____     _____: $_____

                        _____:  $_____     _____: $_____

**Item 8.**　　　　**Pending Lawsuits Filed by You or Your Spouse**

List all pending lawsuits that have been filed by you or your spouse in court or before an administrative agency.  (List lawsuits that resulted in final judgments or settlements in Items 16 and 25).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Initials _____

<u>**Item 9.**</u>    **Pending Lawsuits Filed Against You or Your Spouse**

List all pending lawsuits that have been filed against you or your spouse in court or before an administrative agency.  (List lawsuits that resulted in final judgments or settlements in Items 16 and 25).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____  Relief Requested _____  Nature of Lawsuit _____

_____  Status _____

<u>**Item 10.**</u>    **Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or elsewhere, held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents.  *On a separate page, describe the contents of each box.*

| <u>Owner's Name</u> | <u>Name & Address of Depository Institution</u> | <u>Box No.</u> |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

<u>**Item 11.**</u>    **Business Interests**

List all businesses for which you, your spouse, or your dependents are an officer or director.

▸Business' Name & Address _____

Business Format (*e.g.*, corporation) _____  Description of Business _____

_____  Position(s) Held, and By Whom _____

▸Business' Name & Address _____

Business Format (*e.g.*, corporation) _____  Description of Business _____

_____  Position(s) Held, and By Whom _____

▸Business' Name & Address _____

Business Format (*e.g.*, corporation) _____  Description of Business _____

_____  Position(s) Held, and By Whom _____

Initials _____

## FINANCIAL INFORMATION:  ASSETS AND LIABILITIES

**REMINDER:  "Assets" and "Liabilities" include <u>ALL</u> assets and liabilities, located within the United States or elsewhere, whether held individually or jointly.**

<u>Item 12.</u>                    **Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.  The term "cash" includes currency and uncashed checks.

Cash on Hand  $_____     Cash Held For Your Benefit  $_____

| Name on Account | Name & Address of  Financial Institution | Account No. | Current Balance |
|---|---|---|---|
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |
| _____ | _____ | _____ | $_____ |

<u>Item 13.</u>                    **U.S. Government Securities**

List all U.S. Government securities, including but not limited to, savings bonds, treasury bills, and treasury notes, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

| Name on Account | Type of Obligation | Security Amount | Maturity Date |
|---|---|---|---|
| _____ | _____ | $_____ | _____ |
| _____ | _____ | $_____ | _____ |
| _____ | _____ | $_____ | _____ |

<u>**Item 14.**</u>        **Publicly Traded Securities and Loans Secured by Them**

List all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

‣Issuer _____ Type of Security _____ No. of Units Owned _____

Name on Security _____ Current Fair Market Value $_____ Loan(s) Against Security $_____

Broker House, Address _____ Broker Account No. _____

‣Issuer _____ Type of Security _____ No. of Units Owned _____

Name on Security _____ Current Fair Market Value $_____ Loan(s) Against Security $_____

Broker House, Address _____ Broker Account No. _____

<u>**Item 15.**</u>        **Other Business Interests**

List all other business interests, including but not limited to, non-public corporations, subchapter-S corporations, limited liability corporations ("LLCs"), general or limited partnership interests, joint ventures, sole proprietorships, and oil and mineral leases, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

‣Business Format _____ Business' Name & Address _____

_____ Ownership % _____

Owner (e.g., self, spouse) _____ Current Fair Market Value $_____

‣Business Format _____ Business' Name & Address _____

_____ Ownership % _____

Owner (e.g., self, spouse) _____ Current Fair Market Value $_____

<u>**Item 16.**</u>        **Monetary Judgments or Settlements Owed to You, Your Spouse, or Your Dependents**

List all monetary judgments or settlements owed to you, your spouse, or your dependents.

‣Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $_____

‣Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $_____

Initials _____

**Item 17.**　　　**Other Amounts Owed to You, Your Spouse, or Your Dependents**

List all other amounts owed to you, your spouse, or your dependents.

Debtor's Name, Address, & Telephone No. _____

Original Amount Owed $_____　Current Amount Owed $_____　Monthly Payment $_____

**Item 18.**　　　**Life Insurance Policies**

List all life insurance policies held by you, your spouse, or your dependents.

‣Insurance Company's Name, Address, & Telephone No. _____

_____

Insured _____　Beneficiary _____　Face Value $_____

Policy No. _____　Loans Against Policy $_____　Surrender Value $_____

‣Insurance Company's Name, Address, & Telephone No. _____

_____

Insured _____　Beneficiary _____　Face Value $_____

Policy No. _____　Loans Against Policy $_____　Surrender Value $_____

**Item 19.**　　　**Deferred Income Arrangements**

List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit-sharing plans, 401(k) plans, IRAs, Keoghs, and other retirement accounts, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

‣Name on Account _____　Type of Plan _____　Date Established _____

Trustee or Administrator's Name, Address & Telephone No. _____

_____

Account No. _____　Surrender Value $_____

‣Name on Account _____　Type of Plan _____　Date Established _____

Trustee or Administrator's Name, Address & Telephone No. _____

_____

Account No. _____　Surrender Value $_____

Initials _____

**Item 20.**        **Personal Property**

List all personal property, by category, whether held for personal use or for investment, including but not limited to, furniture and household goods of value, computer equipment, electronics, coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

| Property Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|---|
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |

**Item 21.**        **Cars, Trucks, Motorcycles, Boats, Airplanes, and Other Vehicles**

List all cars, trucks, motorcycles, boats, airplanes, and other vehicles owned or operated by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

▸Vehicle Type _____ Make _____ Model _____ Year _____

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

▸Vehicle Type _____ Make _____ Model _____ Year _____

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

**Item 21.  Continued**

‣Vehicle Type _____ Make _____ Model _____ Year _____

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

**Item 22.        Real Property**

List all real estate held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

‣Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Acquisition Date_____ Purchase Price $_____ Current Value $_____

Basis of Valuation_____ Loan or Account No._____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

‣Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Acquisition Date_____ Purchase Price $_____ Current Value $_____

Basis of Valuation_____ Loan or Account No._____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

**Item 23.**        **Credit Cards**

List each credit card held by you, your spouse, or your dependents.  Also list any other credit cards that you, your spouse, or your dependents use.

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance | Minimum Monthly Payment |
|---|---|---|---|---|
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |
| _____ | _____ | _____ | $_____ | $_____ |

**Item 24.**        **Taxes Payable**

List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependants.

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| _____ | $_____ | _____ |
| _____ | $_____ | _____ |
| _____ | $_____ | _____ |
| _____ | $_____ | _____ |

**Item 25.**        **Judgments or Settlements Owed**

List all judgments or settlements owed by you, your spouse, or your dependents.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date_____ Amount $_____

Initials _____

<u>**Item 26.**</u>        **Other Loans and Liabilities**

List all other loans or liabilities in your, your spouse's, or your dependents' names.

‣Name & Address of Lender/Creditor _____

Nature of Liability_____ Name(s) on Liability_____

Date of Liability_____ Amount Borrowed $_____ Current Balance $_____

Payment Amount $_____ Frequency of Payment_____

‣Name & Address of Lender/Creditor _____

Nature of Liability_____ Name(s) on Liability_____

Date of Liability_____ Amount Borrowed $_____ Current Balance $_____

Payment Amount $_____ Frequency of Payment_____


## OTHER FINANCIAL INFORMATION

<u>**Item 27.**</u>        **Tax Returns**

List all federal tax returns that were filed during the last three years by or on behalf of you, your spouse, or your dependents. *Provide a copy of each signed tax return that was filed during the last three years.*

| <u>Tax Year</u> | <u>Name(s) on Return</u> | <u>Refund Expected</u> |
|---|---|---|
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |

<u>**Item 28.**</u>        **Applications for Credit**

List all applications for bank loans or other extensions of credit that you, your spouse, or your dependents have submitted within the last two years. *Provide a copy of each application, including all attachments.*

| <u>Name(s) on Application</u> | <u>Name & Address of Lender</u> |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

Initials _____

**Item 29.**        **Trusts and Escrows**

List all funds or other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents.  Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity.  *Provide copies of all executed trust documents.*

| Trustee or Escrow Agent's Name & Address | Date Established | Grantor | Beneficiaries | Present Market Value of Assets |
|---|---|---|---|---|
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

**Item 30.**        **Transfers of Assets**

List each person to whom you have transferred, in the aggregate, more than $2,500 in funds or other assets during the previous three years by loan, gift, sale, or other transfer.  For each such person, state the total amount transferred during that period.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (*e.g.*, Loan, Gift) |
|---|---|---|---|---|
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

Initials _____

## SUMMARY FINANCIAL SCHEDULES

<u>Item 31.</u>        **Combined Balance Sheet for You, Your Spouse, and Your Dependents**

| <u>ASSETS</u> | | <u>LIABILITIES</u> | |
|---|---|---|---|
| Cash on Hand (Item 12) | $_____ | Credit Cards (Item 23) | $_____ |
| Cash in Financial Institutions (Item 12) | $_____ | Motor Vehicles - Liens (Item 21) | $_____ |
| U.S. Government Securities (Item 13) | $_____ | Real Property - Encumbrances (Item 22) | $_____ |
| Publicly Traded Securities (Item 14) | $_____ | Loans Against Publicly Traded Securities (Item 14) | $_____ |
| Other Business Interests (Item 15) | $_____ | Taxes Payable (Item 24) | $_____ |
| Judgments or Settlements Owed to You  (Item 16) | $_____ | Judgments or Settlements Owed (Item 25) | $_____ |
| Other Amounts Owed to You (Item 17) | $_____ | Other Loans and Liabilities (Item 26) | $_____ |
| Surrender Value of Life Insurance (Item 18) | $_____ | | |
| Deferred Income Arrangements (Item 19) | $_____ | <u>Other Liabilities</u> (Itemize) | |
| Personal Property (Item 20) | $_____ | _____ | $_____ |
| Motor Vehicles (Item 21) | $_____ | _____ | $_____ |
| Real Property (Item 22) | $_____ | _____ | $_____ |
| | | _____ | $_____ |
| <u>Other Assets</u> (Itemize) | | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| _____ | $_____ | _____ | $_____ |
| Total Assets | $_____ | Total Liabilities | $_____ |

Initials _____

<u>**Item 32.**</u>      **Combined Average Monthly Income and Expenses for You, Your Spouse, and Your Dependents for the Last 6 Months**

Provide the average monthly income and expenses for you, your spouse, and your dependents for the last 6 months.  Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

<u>INCOME</u>                                                              <u>EXPENSES</u>

| | | |
|---|---|---|
| Salary - After Taxes | $_____ | Mortgage Payments for Residence(s) $_____ |
| Fees, Commissions, and Royalties | $_____ | Property Taxes for Residence(s) $_____ |
| Interest | $_____ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance $_____ |
| Dividends and Capital Gains | $_____ | Car or Other Vehicle Lease or Loan Payments $_____ |
| Gross Rental Income | $_____ | Food Expenses $_____ |
| Profits from Sole Proprietorships | $_____ | Clothing Expenses $_____ |
| Distributions from Partnerships, S-Corporations, and LLCs | $_____ | Utilities $_____ |
| Distributions from Trusts and Estates | $_____ | Medical Expenses, Including Insurance $_____ |
| Distributions from Deferred Income Arrangements | $_____ | Other Insurance Premiums $_____ |
| Social Security Payments | $_____ | Other Transportation Expenses $_____ |
| Alimony/Child Support Received | $_____ | Other Household Expenses $_____ |
| Gambling Income | $_____ | |

<u>Other Income</u> (Itemize)                                    <u>Other Expenses</u> (Itemize)

_____  $_____         _____  $_____

_____  $_____         _____  $_____

_____  $_____         _____  $_____

_____  $_____         _____  $_____

Total Income  $_____                              Total Expenses  $_____

Initials _____

**ATTACHMENTS**

**Item 33.**        **Documents Attached to this Financial Statement**

List all documents that are being submitted with this financial statement.

| Item No. Document Relates To | Description of Document |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____          _____
(Date)                                              Signature

Initials _____

*Attachment B*

## FEDERAL TRADE COMMISSION

## FINANCIAL STATEMENT OF CORPORATE DEFENDANT

**Instructions**:

1.  Complete all items.  Enter "None" or "N/A" ("Not Applicable") where appropriate.  If you cannot fully answer a question, explain why.

2.  The font size within each field will adjust automatically as you type to accommodate longer responses.

3.  In completing this financial statement, "the corporation" refers not only to this corporation but also to each of its predecessors that are not named defendants in this action.

4.  When an Item asks for information about assets or liabilities "held by the corporation," include ALL such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.

5.  Attach continuation pages as needed.  On the financial statement, state next to the Item number that the Item is being continued.  On the continuation page(s), identify the Item number being continued.

6.  Type or print legibly.

7.  An officer of the corporation must sign and date the completed financial statement on the last page and initial each page in the space provided in the lower right corner.

**Penalty for False Information**:

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration." (18 U.S.C. § 1623)

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

<u>**BACKGROUND INFORMATION**</u>

<u>**Item 1.**</u>        **General Information**

Corporation's Full Name _____

Primary Business Address _____ From (Date) _____

Telephone No. _____ Fax No. _____

 E-Mail Address_____ Internet Home Page_____

All other current addresses & previous addresses for past five years, including post office boxes and mail drops:

Address_____ From/Until_____

Address_____ From/Until_____

Address_____ From/Until_____

All predecessor companies for past five years:

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

<u>**Item 2.**</u>        **Legal Information**

Federal Taxpayer ID No. _____ State & Date of Incorporation _____

State Tax ID No. _____ State _____ Profit or Not For Profit _____

Corporation's Present Status:  Active _____ Inactive _____ Dissolved _____

If Dissolved:  Date dissolved _____ By Whom _____

Reasons _____

Fiscal Year-End (Mo./Day) _____ Corporation's Business Activities _____

<u>**Item 3.**</u>        **Registered Agent**

Name of Registered Agent _____

Address _____ Telephone No. _____

Page  2                                            Initials _____

<u>**Item 4.**</u>        **Principal Stockholders**

List all persons and entities that own at least 5% of the corporation's stock.

<u>Name & Address</u>                                                                      <u>% Owned</u>

_____    _____

_____    _____

_____    _____

_____    _____

<u>**Item 5.**</u>        **Board Members**

List all members of the corporation's Board of Directors.

<u>Name & Address</u>                                      <u>% Owned</u>   <u>Term (From/Until)</u>

_____    _____   _____

_____    _____   _____

_____    _____   _____

_____    _____   _____

_____    _____   _____

<u>**Item 6.**</u>        **Officers**

List all of the corporation's officers, including *de facto* officers (individuals with significant management responsibility whose titles do not reflect the nature of their positions).

<u>Name & Address</u>                                                                      <u>% Owned</u>

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

Initials _____

**Item 7.**        **Businesses Related to the Corporation**

List all corporations, partnerships, and other business entities in which this corporation has an ownership interest.

<u>Name & Address</u>                                          <u>Business Activities</u>   <u>% Owned</u>

_____   _____   _____

_____   _____   _____

_____   _____   _____

State which of these businesses, if any, has ever transacted business with the corporation _____

_____


**Item 8.**        **Businesses Related to Individuals**

List all corporations, partnerships, and other business entities in which the corporation's principal stockholders, board members, or officers (i.e., the individuals listed in Items 4 - 6 above) have an ownership interest.

<u>Individual's Name</u>              <u>Business Name & Address</u>              <u>Business Activities</u>   <u>% Owned</u>

_____   _____   _____   _____

_____   _____   _____   _____

_____   _____   _____   _____

State which of these businesses, if any, have ever transacted business with the corporation _____

_____


**Item 9.**        **Related Individuals**

List all related individuals with whom the corporation has had any business transactions during the three previous fiscal years and current fiscal year-to-date.  A "related individual" is a spouse, sibling, parent, or child of the principal stockholders, board members, and officers (i.e., the individuals listed in Items 4 - 6 above).

<u>Name and Address</u>                              <u>Relationship</u>   <u>Business Activities</u>

_____   _____   _____

_____   _____   _____

_____   _____   _____


Page  4                                          Initials _____

**Item 10.**        **Outside Accountants**

List all outside accountants retained by the corporation during the last three years.

| Name | Firm Name | Address | CPA/PA? |
|------|-----------|---------|---------|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Item 11.**        **Corporation's Recordkeeping**

List all individuals within the corporation with responsibility for keeping the corporation's financial books and records for the last three years.

| Name, Address, & Telephone Number | Position(s) Held |
|-----------------------------------|------------------|
| | |
| | |
| | |
| | |

**Item 12.**        **Attorneys**

List all attorneys retained by the corporation during the last three years.

| Name | Firm Name | Address |
|------|-----------|---------|
| | | |
| | | |
| | | |
| | | |
| | | |

Initials _____

<u>**Item 13.**</u>          **Pending Lawsuits Filed by the Corporation**

List all pending lawsuits that have been filed by the corporation in court or before an administrative agency.  (List lawsuits that resulted in final judgments or settlements in favor of the corporation in Item 25).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____   Relief Requested_____   Nature of Lawsuit_____

_____   Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____   Relief Requested_____   Nature of Lawsuit_____

_____   Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____   Relief Requested_____   Nature of Lawsuit_____

_____   Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____   Relief Requested_____   Nature of Lawsuit_____

_____   Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____   Relief Requested_____   Nature of Lawsuit_____

_____   Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____   Relief Requested_____   Nature of Lawsuit_____

_____   Status_____

Initials _____

<u>**Item 14.**</u>        **Current Lawsuits Filed Against the Corporation**

List all pending lawsuits that have been filed against the corporation in court or before an administrative agency.  (List lawsuits that resulted in final judgments, settlements, or orders in Items 26 - 27).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

Initials _____

<u>Item 15.</u>        **Bankruptcy Information**

List all state insolvency and federal bankruptcy proceedings involving the corporation.

Commencement Date _____ Termination Date _____ Docket No. _____

If State Court: Court & County _____ If Federal Court: District _____

Disposition _____

<u>Item 16.</u>        **Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or elsewhere, held by the corporation, or held by others for the benefit of the corporation. *On a separate page, describe the contents of each box.*

| <u>Owner's Name</u> | <u>Name & Address of Depository Institution</u> | <u>Box No.</u> |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

<u>**FINANCIAL INFORMATION**</u>

**REMINDER:  When an Item asks for information about assets or liabilities "held by the corporation," include <u>ALL</u> such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.**

<u>Item 17.</u>        **Tax Returns**

List all federal and state corporate tax returns filed for the last three complete fiscal years. *Attach copies of all returns.*

| <u>Federal/ State/Both</u> | <u>Tax Year</u> | <u>Tax Due Federal</u> | <u>Tax Paid Federal</u> | <u>Tax Due State</u> | <u>Tax Paid State</u> | <u>Preparer's Name</u> |
|---|---|---|---|---|---|---|
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |
| _____ | _____ | $_____ | $_____ | $_____ | $_____ | _____ |

<u>Item 18.</u>        **Financial Statements**

List all financial statements that were prepared for the corporation's last three complete fiscal years and for the current fiscal year-to-date. *Attach copies of all statements, providing audited statements if available.*

| <u>Year</u> | <u>Balance Sheet</u> | <u>Profit & Loss Statement</u> | <u>Cash Flow Statement</u> | <u>Changes in Owner's Equity</u> | <u>Audited?</u> |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

<u>Item 19.</u>        **Financial Summary**

For each of the last three complete fiscal years and for the current fiscal year-to-date for which the corporation has not provided a profit and loss statement in accordance with Item 18 above, provide the following summary financial information.

| | <u>Current Year-to-Date</u> | <u>1 Year Ago</u> | <u>2 Years Ago</u> | <u>3 Years Ago</u> |
|---|---|---|---|---|
| <u>Gross Revenue</u> | $ | $ | $ | $ |
| <u>Expenses</u> | $ | $ | $ | $ |
| <u>Net Profit After Taxes</u> | $ | $ | $ | $ |
| <u>Payables</u> | $ | | | |
| <u>Receivables</u> | $ | | | |

<u>Item 20.</u>        **Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by the corporation. The term "cash" includes currency and uncashed checks.

Cash on Hand $_____   Cash Held for the Corporation's Benefit $_____

| <u>Name & Address of Financial Institution</u> | <u>Signator(s) on Account</u> | <u>Account No.</u> | <u>Current Balance</u> |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

**Item 21.**        **Government Obligations and Publicly Traded Securities**

List all U.S. Government obligations, including but not limited to, savings bonds, treasury bills, or treasury notes, held by the corporation.  Also list all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by the corporation.

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

**Item 22.**        **Real Estate**

List all real estate, including leaseholds in excess of five years, held by the corporation.

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

Initials _____

**Item 23.**        **Other Assets**

List all other property, by category, with an estimated value of $2,500 or more, held by the corporation, including but not limited to, inventory, machinery, equipment, furniture, vehicles, customer lists, computer software, patents, and other intellectual property.

| Property Category | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |
| _____ | _____ | $_____ | $_____ |

**Item 24.**        **Trusts and Escrows**

List all persons and other entities holding funds or other assets that are in escrow or in trust for the corporation.

| Trustee or Escrow Agent's Name & Address | Description and Location of Assets | Present Market Value of Assets |
|---|---|---|
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |
| _____ | _____ | $_____ |

Initials _____

**Item 25.**      **Monetary Judgments and Settlements Owed To the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed to the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____


**Item 26.**      **Monetary Judgments and Settlements Owed By the Corporation**

List all monetary judgments and settlements, recorded and unrecorded, owed by the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Initials _____

**Item 27.**      **Government Orders and Settlements**

List all existing orders and settlements between the corporation and any federal or state government entities.

Name of Agency _____ Contact Person _____

Address _____ Telephone No. _____

Agreement Date _____ Nature of Agreement _____

**Item 28.**      **Credit Cards**

List all of the corporation's credit cards and store charge accounts and the individuals authorized to use them.

| Name of Credit Card or Store | Names of Authorized Users and Positions Held |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**Item 29.**      **Compensation of Employees**

List all compensation and other benefits received from the corporation by the five most highly compensated employees, independent contractors, and consultants (other than those individuals listed in Items 5 and 6 above), for the two previous fiscal years and current fiscal year-to-date. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, bonuses, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |
| _____ | $_____ | $_____ | $_____ | _____ |

Initials _____

**Item 30.**        **Compensation of Board Members and Officers**

List all compensation and other benefits received from the corporation by each person listed in Items 5 and 6, for the current fiscal year-to-date and the two previous fiscal years.  "Compensation"  includes, but is not limited to, salaries, commissions, consulting fees, dividends, distributions, royalties, pensions, and profit sharing plans.  "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| _____ | $ _____ | $ _____ | $ _____ | _____ |
| _____ | $ _____ | $ _____ | $ _____ | _____ |
| _____ | $ _____ | $ _____ | $ _____ | _____ |
| _____ | $ _____ | $ _____ | $ _____ | _____ |
| _____ | $ _____ | $ _____ | $ _____ | _____ |
| _____ | $ _____ | $ _____ | $ _____ | _____ |
| _____ | $ _____ | $ _____ | $ _____ | _____ |
| _____ | $ _____ | $ _____ | $ _____ | _____ |

**Item 31.**        **Transfers of Assets Including Cash and Property**

List all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| _____ | _____ | $ _____ | _____ | _____ |
| _____ | _____ | $ _____ | _____ | _____ |
| _____ | _____ | $ _____ | _____ | _____ |
| _____ | _____ | $ _____ | _____ | _____ |
| _____ | _____ | $ _____ | _____ | _____ |

Initials _____

**Item 32.**      **Documents Attached to the Financial Statement**

List all documents that are being submitted with the financial statement.

| Item No. Document Relates To | Description of Document |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

     I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court.  I have used my best efforts to obtain the information requested in this statement.  The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge.  I have provided all requested documents in my custody, possession, or control.  I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines).  I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____
(Date)

_____
Signature

_____
Corporate Position

Initials _____

*Attachment C*

## CONSENT TO RELEASE OF FINANCIAL RECORDS

I, _____, do hereby direct any bank, savings and loan association, credit union, depository institution, finance company, commercial lending company, credit card processor, credit card processing entity, automated clearing house, network transaction processor, bank debit processing entity, brokerage house, escrow agent, money market or mutual fund, title company, commodity trading company, trustee, or person that holds, controls or maintains custody of assets, wherever located that are owned or controlled by me or at which I have an account of any kind, or at which a corporation or other entity has a bank account of any kind upon which I am authorized to draw, and its officers, employees and agents, to disclose all information and deliver copies of all documents of every nature in your possession or control which relate to the said accounts to any attorney of the Federal Trade Commission, and to give evidence relevant thereto, in the matter of *Federal Trade Commission v. Boost Software, Inc., et al.,* Civ. No. _____, now pending in the United States District Court for the Southern District of Florida, and this shall be irrevocable authority for so doing.

This direction is intended to apply to the laws of countries other than the United States of America which restrict or prohibit the disclosure of bank or other financial information without the consent of the holder of the account, and shall be construed as consent with respect thereto, and the same shall apply to any of the accounts for which I may be a relevant principal.

Dated: _____     _____
                                                    [Signature]

                                   _____
                                                    [Printed Name]

*Attachment D*

Form **4506**

(Rev. September 2013)

Department of the Treasury
Internal Revenue Service

# Request for Copy of Tax Return

▶ **Request may be rejected if the form is incomplete or illegible.**

OMB No. 1545-0429

**Tip.** You may be able to get your tax return or return information from other sources. If you had your tax return completed by a paid preparer, they should be able to provide you a copy of the return. The IRS can provide a **Tax Return Transcript** for many returns free of charge. The transcript provides most of the line entries from the original tax return and usually contains the information that a third party (such as a mortgage company) requires. See **Form 4506-T, Request for Transcript of Tax Return,** or you can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Order a Return or Account Transcript" or call 1-800-908-9946.

| | |
|---|---|
| **1a** Name shown on tax return. If a joint return, enter the name shown first. | **1b** First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) |
| **2a** If a joint return, enter spouse's name shown on tax return. | **2b** Second social security number or individual taxpayer identification number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

**4** Previous address shown on the last return filed if different from line 3 (see instructions)

**5** If the tax return is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

**Caution.** *If the tax return is being mailed to a third party, ensure that you have filled in lines 6 and 7 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your tax return to the third party listed on line 5, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your return information, you can specify this limitation in your written agreement with the third party.*

**6** **Tax return requested.** Form 1040, 1120, 941, etc. and all attachments as originally submitted to the IRS, including Form(s) W-2, schedules, or amended returns. Copies of Forms 1040, 1040A, and 1040EZ are generally available for 7 years from filing before they are destroyed by law. Other returns may be available for a longer period of time. Enter only one return number. If you need more than one type of return, you must complete another Form 4506. ▶

**Note.** *If the copies must be certified for court or administrative proceedings, check here* . . . . . . . . . . . . . . . . ☐

**7** **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than eight years or periods, you must attach another Form 4506.

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

**8** **Fee.** There is a $50 fee for each return requested. **Full payment must be included with your request or it will be rejected. Make your check or money order payable to "United States Treasury." Enter your SSN, ITIN, or EIN and "Form 4506 request" on your check or money order.**

| | | |
|---|---|---|
| **a** Cost for each return . . . . . . . . . . . . . . . . | $ | 50.00 |
| **b** Number of returns requested on line 7 . . . . . . . . . . | | |
| **c** Total cost. Multiply line 8a by line 8b . . . . . . . . . . | $ | |

**9** If we cannot find the tax return, we will refund the fee. If the refund should go to the third party listed on line 5, check here . . . . . ☐

**Caution.** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax return requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506 on behalf of the taxpayer. **Note.** *For tax returns being sent to a third party, this form must be received within 120 days of the signature date.*

Phone number of taxpayer on line 1a or 2a

**Sign Here** ▶

▶ Signature (see instructions)                                  Date

▶ Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ Spouse's signature                                              Date

Form 4506 (Rev. 9-2013)

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506 and its instructions, go to *www.irs.gov/form4506*. Information about any recent developments affecting Form 4506, Form 4506T and Form 4506T-EZ will be posted on that page.

## General Instructions

**Caution.** Do not sign this form unless all applicable lines have been completed.

**Purpose of form.** Use Form 4506 to request a copy of your tax return. You can also designate (on line 5) a third party to receive the tax return.

**How long will it take?** It may take up to 75 calendar days for us to process your request.

**Tip.** Use Form 4506-T, Request for Transcript of Tax Return, to request tax return transcripts, tax account information, W-2 information, 1099 information, verification of non-filing, and records of account.

**Automated transcript request.** You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Order a Return or Account Transcript" or call 1-800-908-9946.

**Where to file.** Attach payment and mail Form 4506 to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual returns (Form 1040) and one for all other returns.

If you are requesting a return for more than one year and the chart below shows two different addresses, send your request to the address based on the address of your most recent return.

## Chart for individual returns
(Form 1040 series)

| If you filed an individual return and lived in: | Mail to: |
| --- | --- |
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team Stop 6716 AUSC Austin, TX 73301 |
| Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | Internal Revenue Service RAIVS Team Stop 37106 Fresno, CA 93888 |
| Connecticut, Delaware, District of Columbia, Florida, Georgia, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia | Internal Revenue Service RAIVS Team Stop 6705 P-6 Kansas City, MO 64999 |

## Chart for all other returns

| If you lived in or your business was in: | Mail to: |
| --- | --- |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, Wyoming, a foreign country, or A.P.O. or F.P.O. address | Internal Revenue Service RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 |
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia, Wisconsin | Internal Revenue Service RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250 |

## Specific Instructions

**Line 1b.** Enter your employer identification  number (EIN) if you are requesting a copy of  a business return. Otherwise, enter the first social security number (SSN) or your individual taxpayer identification number (ITIN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form  1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, please include it on this line 3.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note.** If the address on Lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address. For a business address, file Form 8822-b, Change of Address or Responsible Party — Business.

**Signature and date.** Form 4506 must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the return be sent to a third party, the IRS must receive Form 4506 within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines are completed before signing.

*Individuals.* Copies of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506 exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506 can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506 can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

*All others.* See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506 for a taxpayer only if this authority has been specifically delegated to the representative on Form 2848, line 5. Form 2848 showing the delegation must be attached to Form 4506.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested return(s) under the Internal Revenue Code. We need this information to properly identify the return(s) and respond to your request. If you request a copy of a tax return, sections 6103 and 6109 require you to provide this information, including your SSN or EIN, to process your request. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506 will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 16 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506 simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224.

Do not send the form to this address. Instead, see *Where to file* on this page.

# APPENDIX A

## PART 310—TELEMARKETING SALES RULE 16 CFR PART 310

Sec.
310.1  Scope of regulations in this part.
310.2  Definitions.
310.3  Deceptive telemarketing acts or practices.
310.4  Abusive telemarketing acts or practices.
310.5  Recordkeeping requirements.
310.6  Exemptions.
310.7  Actions by states and private persons.
310.8  Fee for access to the National Do Not Call Registry.
310.9  Severability.

AUTHORITY: 15 U.S.C. 6101–6108.

SOURCE: 75 FR 48516, Aug. 10, 2010, unless otherwise noted.

### § 310.1  Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101–6108, as amended.

### § 310.2  Definitions.

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

380

(b) *Attorney General* means the chief legal officer of a state.

(c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Charitable contribution* means any donation or gift of money or any other thing of value.

(g) *Commission* means the Federal Trade Commission.

(h) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(i) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(j) *Credit card sales draft* means any record or evidence of a credit card transaction.

(k) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(l) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(m) *Debt relief service* means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

(n) *Donor* means any person solicited to make a charitable contribution.

(o) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(p) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(q) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(r) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(s) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(t) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(u) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

(v) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(w) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(x) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(y) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(z) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(aa) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(bb) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(cc) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(dd) *Telemarketing* means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(ee) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An "external upsell" is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

## § 310.3   Deceptive telemarketing acts or practices.

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer consents to pay[659] for goods or services offered,

---

[659] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by § 310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or directing a customer to have a courier pick up payment or authorization for payment. In

Attachment A

failing to disclose truthfully, in a clear and conspicuous manner, the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;[660]

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643;

(vii) If the offer includes a negative option feature, all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); and

(viii) In the sale of any debt relief service:

(A) the amount of time necessary to achieve the represented results, and to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the time by which the debt relief service provider will make a bona fide settlement offer to each of them;

(B) to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the amount of money or the percentage of each outstanding debt that the customer must accumulate before the debt relief service provider will make a bona fide settlement offer to each of them;

(C) to the extent that any aspect of the debt relief service relies upon or results in the customer's failure to make timely payments to creditors or debt collectors, that the use of the debt relief service will likely adversely affect the customer's creditworthiness, may result in the customer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest; and

(D) to the extent that the debt relief service requests or requires the customer to place funds in an account at an insured financial institution, that the customer owns the funds held in the account, the customer may withdraw from the debt relief service at any time without penalty, and, if the customer withdraws, the customer must receive all funds in the account, other than funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C).

(2) Misrepresenting, directly or by implication, in the sale of goods or

<hr>

the case of debt relief services, the seller or telemarketer must make the disclosures required by § 310.3(a)(1) before the consumer enrolls in an offered program.

[660] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with § 310.3(a)(1)(i) of this Rule.

services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643;

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); or

(x) Any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service; the amount of time necessary to achieve the represented results; the amount of money or the percentage of each outstanding debt that the customer must accumulate before the provider of the debt relief service will initiate attempts with the customer's

creditors or debt collectors or make a bona fide offer to negotiate, settle, or modify the terms of the customer's debt; the effect of the service on a customer's creditworthiness; the effect of the service on collection efforts of the customer's creditors or debt collectors; the percentage or number of customers who attain the represented results; and whether a debt relief service is offered or provided by a non-profit entity.

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[661] or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[662] Such authorization shall be deemed verifiable if any of the following means is employed:

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[663]

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) The number of debits, charges, or payments (if more than one);

(B) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

---

[661] Truth in Lending Act, 15 U.S.C. 1601 et seq., and Regulation Z, 12 CFR part 226.

[662] Electronic Fund Transfer Act, 15 U.S.C. 1693 et seq., and Regulation E, 12 CFR part 205.

[663] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

**Federal Trade Commission** §310.3

(C) The amount(s) of the debit(s), charge(s), or payment(s);

(D) The customer's or donor's name;

(E) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

(F) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(G) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§310.3(a)(3)(ii)(A)–(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; provided, however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

385

**§ 310.4 Abusive telemarketing acts or practices.**

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous telemarketing transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5)(i) Requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

(A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

(B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

(C) To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

(*1*) Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

(*2*) Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

(ii) Nothing in § 310.4(a)(5)(i) prohibits requesting or requiring the customer to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation, settlement, reduction, or other alteration of the terms of payment or other terms of a debt, provided that:

(A) The funds are held in an account at an insured financial institution;

(B) The customer owns the funds held in the account and is paid accrued interest on the account, if any;

(C) The entity administering the account is not owned or controlled by, or in any way affiliated with, the debt relief service;

(D) The entity administering the account does not give or accept any money or other compensation in exchange for referrals of business involving the debt relief service; and

(E) The customer may withdraw from the debt relief service at any time without penalty, and must receive all

386

**Federal Trade Commission**                                    **§ 310.4**

funds in the account, other than funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C), within seven (7) business days of the customer's request.

(6) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; provided, however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(7) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(7)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) Obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) Obtain from the customer his or her express agreement to be charged for the goods or services and to be charged using the account number pursuant to paragraph (a)(7)(i)(A) of this section; and,

(C) Make and maintain an audio recording of the entire telemarketing transaction.

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(7)(i) of this section, the seller or telemarketer must:

(A) At a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) Obtain from the customer or donor his or her express agreement to

be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(7)(ii)(A) of this section; or

(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with § 310.4(b)(1)(iii);

(iii) Initiating any outbound telephone call to a person when:

(A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) That person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller:

(i) Has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such

387

person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature[664] of that person; or

(ii) Has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in §310.4(b)(4)(iii), unless:

(A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

(ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

(iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

(iv) Includes such person's telephone number and signature;[665] and

(B) In any such call to induce the purchase of any good or service, or to

induce a charitable contribution from a member of, or previous donor to, a non-profit charitable organization on whose behalf the call is made, the seller or telemarketer:

(i) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

(ii) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by §310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(A) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(1) Automatically add the number called to the seller's entity-specific Do Not Call list;

(2) Once invoked, immediately disconnect the call; and

(3) Be available for use at any time during the message; and

(B) In the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll-free telephone number to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

(1) Automatically adds the number called to the seller's entity-specific Do Not Call list;

(2) Immediately thereafter disconnects the call; and

(3) Is accessible at any time throughout the duration of the telemarketing campaign; and

(iii) Complies with all other requirements of this part and other applicable federal and state laws.

(C) Any call that complies with all applicable requirements of this paragraph (v) shall not be deemed to violate §310.4(b)(1)(iv) of this part.

[664] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

[665] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

(D) This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with §310.4(b)(1)(iii)(A), or maintained by the Commission pursuant to §310.4(b)(1)(iii)(B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on such lists.

(3) A seller or telemarketer will not be liable for violating §310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i) It has established and implemented written procedures to comply with §310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to §310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with §310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to §310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to §310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating §310.4(b)(1)(ii) or (iii) is the result of error.

(4) A seller or telemarketer will not be liable for violating §310.4(b)(1)(iv) if:

(i) The seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured over the duration of a single calling campaign, if less than 30 days, or separately over each successive 30-day period or portion thereof that the campaign continues.

(ii) The seller or telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call;

(iii) Whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[666]; and

(iv) The seller or telemarketer, in accordance with §310.5(b)-(d), retains records establishing compliance with §310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or

---

[666] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

389

participate in a prize promotion if a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion; provided, however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

(2) That the purpose of the call is to solicit a charitable contribution.

[75 FR 48516, Aug. 10, 2010, as amended at 76 FR 58716, Sept. 22, 2011]

§ 310.5 Recordkeeping requirements.

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[667]

---

[667] For offers of consumer credit products subject to the Truth in Lending Act, 15

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; provided, however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by § 310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by § 310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§ 310.5(a)(1)-(3) and (5); the telemarketer shall be responsible for complying with § 310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this section.

---

U.S.C. 1601 *et seq.,* and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with § 310.5(a)(3) of this Rule.

### §310.6  Exemptions.

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by §310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR part 308, *provided,* however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising," ("Franchise Rule") 16 CFR part 436, and the sale of business opportunities subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities," ("Business Opportunity Rule") 16 CFR part 437, *provided,* however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided,* however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided,* however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, *provided,* however, that this exemption does not apply to calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise

Rule or Business Opportunity Rule, or advertisements involving goods or services described in §§310.3(a)(1)(vi) or 310.4(a)(2)-(4); or to any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in §310.3(a)(1) of this Rule, for any goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in §310.3(d) of this Rule for any requested charitable contribution; *provided,* however, that this exemption does not apply to calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or goods or services described in §§310.3(a)(1)(vi) or 310.4(a)(2)-(4); or to any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided,* however, that §310.4(b)(1)(iii)(B) and §310.5 of this Rule shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

### §310.7  Actions by states and private persons.

(a) Any attorney general or other officer of a state authorized by the state to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, DC 20580, and

shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

**§ 310.8   Fee for access to the National Do Not Call Registry.**

(a) It is a violation of this Rule for any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by § 310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under § 310.4(b)(1)(iii)(B); provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or through another person, first has paid the annual fee, required by § 310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $59 for each area code of data accessed, up to a maximum of $16,228; *provided*, however, that there shall be no charge to any person for accessing the first five area codes of data, and *provided further*, that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing area codes of data in the National Do Not Call Registry if the person is permitted to access, but is not required to access, the National Do Not Call Registry under this Rule, 47 CFR 64.1200, or any other Federal regulation or law. Any person accessing the National Do Not Call Registry may not participate in any arrangement to share the cost of accessing the registry, including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) Each person who pays, either directly or through another person, the annual fee set forth in § 310.8(c), each person excepted under § 310.8(c) from paying the annual fee, and each person excepted from paying an annual fee under § 310.4(b)(1)(iii)(B), will be provided a unique account number that will allow that person to access the registry data for the selected area codes at any time for the twelve month period beginning on the first day of the month in which the person paid the fee ("the annual period"). To obtain access to additional area codes of data during the first six months of the annual period, each person required to pay the fee under § 310.8(c) must first pay $59 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, each person required to pay the fee under § 310.8(c) must first pay $30 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to access the additional area codes of data for the remainder of the annual period.

(e) Access to the National Do Not Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone

**Federal Trade Commission**                                         **§ 311.4**

calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority. Prior to accessing the National Do Not Call Registry, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of this Rule or to otherwise prevent telephone calls to telephone numbers on the registry. If the person is accessing the registry on behalf of sellers, that person also must identify each of the sellers on whose behalf it is accessing the registry, must provide each seller's unique account number for access to the national registry, and must certify, under penalty of law, that the sellers will be using the information gathered from the registry solely to comply with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on the registry.

[75 FR 48516, Aug. 10, 2010; 75 FR 51934, Aug. 24, 2010, as amended at 77 FR 51697, Aug. 27, 2012; 78 FR 53643, Aug. 30, 2013]

**§ 310.9  Severability.**

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

Attachment A